**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
mzinna@kelleydrye.com
David Lindenbaum (admitted *pro hac vice*)
dlindenbaum@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**LANG & KLAIN, P.C.**
6730 N. SCOTTSDALE RD., SUITE 101
SCOTTSDALE, ARIZONA 85253
TELEPHONE (480) 534-4900
***Please e-serve filings on:***
***Filing@lang-klain.com***

WILLIAM G. KLAIN, #015851
wklain@lang-klain.com *(not for e-service)*

*Attorneys for Plaintiff Extremity Medical, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Extremity Medical, LLC,

Plaintiff,

v.

Fusion Orthopedics, LLC,

Defendant.

Case No.: 2:22-cv-00723-PHX-GMS

**PLAINTIFF EXTREMITY MEDICAL, LLC'S OPPOSITION TO FUSION ORTHOPEDICS, LLC'S MOTION TO STAY**

Plaintiff Extremity Medical, LLC ("Extremity Medical") respectfully opposes Defendant Fusion Orthopedics, LLC's ("Fusion") Motion to Stay the litigation pending resolution of the *Inter Parties* Review of the patent-in-suit, U.S. Patent No. 11,298,166 ("the '166 Patent"). (ECF 77).

**Table of Contents**

**Page**

I. Introduction ........ 1

II. Factual Background ........ 3

III. Legal Standards ........ 5

A. Inter Partes Review ........ 5

B. Motion to Stay ........ 5

IV. Argument ........ 7

A. Factor #1 – Stage of the Litigation ........ 8

B. Factor #2 – Simplification of Issues in Question ........ 9

C. Factor #3 – Undue Prejudice or Clear Tactical Advantage ........ 11

1. Timing of the IPR Petition ........ 11
2. Timing of the Request for Stay ........ 12
3. Status of the IPR Proceeding ........ 12
4. Relationship of the Parties ........ 13

V. Conclusion ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carl Zeiss A. G. v. Nikon Corp.*, No. 2:17-cv-03221-RGK-MRW, 2018 U.S. Dist. LEXIS 199080 (C.D. Cal. Feb. 9, 2018) ....9

*Caron v. QuicKutz, Inc.*, No. CV-09-02600-PHX-NVW, 2010 U.S. Dist. LEXIS 137786 (D. Ariz. Dec. 15, 2010) ....7, 11

*Drink Tanks Corp. v. Growlerwerks, Inc.*, No. 3:16-cv-410-SI, 2016 U.S. Dist. LEXIS 91964 (D. Or. July 15, 2016)....6, 7, 8, 13

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. SA CV 18-2043-DOC, 2020 U.S. Dist. LEXIS 80901 (C.D. Cal. Jan. 13, 2020)....10

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988)....5

*Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 U.S. Dist. LEXIS 178547 (N.D. Cal. Dec. 18, 2013)....7, 9

*Freeny v. Apple Inc.*, 2014 WL 3611948 (E.D. Tex. July 22, 2014) ....9

*Fulfillium, Inc. v. ReShape Med., LLC*, No. 2:17-cv-08419-RGK-PLA, 2018 U.S. Dist. LEXIS 229793 (C.D. Cal. June 4, 2018) ....11

*GoPro, Inc. v. C&A Mktg.*, No. 16-cv-03590-JST, 2017 U.S. Dist. LEXIS 92480 (N.D. Cal. June 15, 2017) ....11, 12

*Interwoven, Inc. v. Vertical Comput. Sys.*, No. C 10-04645 RS, 2012 U.S. Dist. LEXIS 30946 (N.D. Cal. Mar. 8, 2012)....9

*Landis v. North Am. Co.*, 299 U.S. 248 (1936)....5, 6

*Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, No. CV-17-03125-PHX-DWL, 2018 U.S. Dist. LEXIS 202071 (D. Ariz. Nov. 29, 2018) ....7

*PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 U.S. Dist. LEXIS 4095 (N.D. Cal. Jan. 13, 2014)....7

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
No. SACV 16-00300-CJC, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016)..............................8

*Polaris Innovations, Ltd. v. Kingston Tech. Co.*,
No. SACV 16-00300-CJC(RAOx), 2016 U.S. Dist. LEXIS 186795 (C.D. Cal. Nov. 17, 2016) ..........................................................................................................5, 9

*Pragmatus Mobile, LLC v. Amazon.com, Inc., et al.*,
C.A. No. 14-436-LPS (E.D. Del. June 17, 2015) ..........................................................10

*Realtime Data LLC v. Actian Corp.*,
No. 6:15-CV-463-RWS-JDL, 2016 U.S. Dist. LEXIS 77566 (E.D. Tex. June 14, 2016) ..........................................................................................................12, 13

*Speakware, Inc. v. Microsoft Corp.*,
No. SA CV 18-1293-DOC, 2019 U.S. Dist. LEXIS 74579 (C.D. Cal. Feb. 21, 2019).5, 11, 13

*Star Envirotech, Inc. v. Redline Detection, LLC*,
No. SACV 12-01861, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013)..............................6

*SynKloud Techs. LLC v. Aesthetics Biomedical Inc.*,
No. CV-22-00015-PHX-DLR, 2022 U.S. Dist. LEXIS 127958 (D. Ariz. July 18, 2022) ..........................................................................................................7

*Tokuyama Corp. v.Vision Dynamics, LLC*,
No. 08-cv-2781-SBS, 2008 U.S. Dist. LEXIS 82732, 2008 WL 4452118 (N.D.Cal. Oct. 3, 2008) ..........................................................................................................6

*TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*,
No. 13-cv-02218-JST, 2013 U.S. Dist. LEXIS 162521 (N.D. Cal. Nov. 13, 2013)................12

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013) ..........................................................................6, 12

*Vector Flow, Inc.* v. *Hid Glob. Corp.*, No. IPR2023-00353, 2023 WL 5167491, at *5 (P.T.A.B. July 17, 2023)..........................................................................................10

*Viskase Corp. v. Am. Nat'l Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001)..........................................................................................6

*VPR Brands LP v. Jupiter Rsch. LLC*,
No. CV-20-02185-PHX-DJH, 2022 U.S. Dist. LEXIS 81835 (D. Ariz. May 5, 2022) ............7

*Wonderland Switz. AG v. Britax Child Safety, Inc.*,
Civil Action No. 0:19-cv-02475-JMC, 2020 U.S. Dist. LEXIS 226315 (D.S.C. Dec. 2, 2020) ..........................................................................................................11

**Statutes**

35 U.S.C. § 141 ..........................................................................................................5

35 U.S.C. § 314(a)–(b)....................4

35 U.S.C § 315(e)(2)....................5

35 U.S.C. § 316(a)(11)....................9

**Other Authorities**

Fed. R. Civ. P. 1....................13

## I. INTRODUCTION

At this stage of this case, Fusion's ill-timed motion to stay should be denied because it is both too late and too early, for different reasons.

First, the motion is premised on an *Inter Partes* Review ("IPR") petition that may never be instituted by the Patent Trial & Appeal Board ("PTAB"). So at present, it is too early to know whether there are any efficiencies in staying this case while the IPR plays out. A stay might be appropriate after the IPR is instituted, and the Court could properly deny this motion without prejudice to refiling *if* the IPR is instituted, but none of Fusion's arguments championing a stay have any merit now — absent an institution decision.

The motion is also too late. Having waited 365 days to file its IPR on the last day it could choose to do so, Fusion has ensured that if the IPR is instituted (which is a large assumption) any final written decision would not issue from the Patent Office until around November 2024. This case can be ready for summary judgment proceedings well before that date, with fact discovery set to be completed next month and expert reports completed before the PTAB even decides whether to institute the IPR, much less issue a Final Written Decision. Adding to the inopportune timing of the motion to stay is the fact that Fusion chose to wait more than three months after filing its IPR before filing the motion. ECF 77. During that time, the parties and the Court invested significant time and resources in completing claim construction briefing, this Court also held a *Markman* Hearing and issued a claim construction Order, and the parties fully served and responded to written discovery requests.

Fusion is clearly trying to play both sides of the fence here. Fusion purposefully chose to move forward with claim construction in this Court rather than file its IPR sooner and ask for a stay sooner, hoping that it would obtain an indefiniteness ruling during claim construction. When that didn't happen and the Court largely rejected Fusion's proposed claim constructions (ECF 73) Fusion decided it would rather bring the parties' dispute to a different forum, with little regard to the investment the Court and the parties have made in advancing the case here.

On this record, Fusion's motion should be denied for at least three reasons.

***First***, this case is too far along to warrant staying it now. The Court has issued a *Markman* Order, all discovery requests have been served, and the parties have produced their documents and responded to all discovery requests. The deadline to complete fact depositions is approximately one month away, and by the time the PTAB decides whether to institute the IPR, the parties will have completed expert reports under the current schedule. *See* ECF 76. The stage of the case and the non-trivial resources that the parties and the Court have already invested into this litigation renders a stay untenable at this point.

***Second***, because Fusion's IPR has not been instituted and may never be instituted, Fusion necessarily fails to show a stay right now will simplify the issues here. Indeed, Fusion's delay alone may trigger a refusal to institute the IPR. The Court should not stay this case prior to a decision by the PTAB to institute and move forward with the IPR.

***Third***, Fusion's proposed stay would unduly prejudice Extremity Medical by delaying resolution of this dispute significantly. The parties expect that they will be in a position to file dispositive motions (and perhaps even get to trial) well before the PTAB would issue a final written decision in the IPR around November 2024 (assuming the PTAB institutes the IPR in the first place). And if the IPR does move forward, but the patent's claims are upheld—as they should be—resolution of the dispute between the parties could be delayed even longer by an appeal of the PTAB's decision or a resumption of this case to litigate infringement and damages. Importantly, Extremity Medical and Fusion are direct competitors, enhancing the prejudice of a delayed judgment to stop Fusion's infringement.

In the end, the real purpose behind Fusion's request for a stay is plain—to delay accountability for its ongoing, willful infringement, and continue eroding Extremity Medical's market share in the meantime. Extremity Medical deserves to have its claims against Fusion resolved expeditiously on the schedule set by this Court, not hijacked by Fusion's late-breaking Plan B to compensate for a negative claim construction. For these reasons, and as explained further herein, Extremity Medical respectfully requests that the Court deny Fusion's Motion to Stay.

## II. FACTUAL BACKGROUND

Extremity Medical filed this litigation on April 28, 2022, alleging Fusion's IntraLock product infringes U.S. Patent No. 11,298,166 ("the '166 Patent"). *See* ECF 1. As described in the Complaint, Extremity Medical is a global medical engineering company that develops next-generation products for fusion, fixation and motion-preserving systems for the upper and lower extremities of the human body, including the hands and feet. ECF 1 at ¶ 12. The President of Fusion, Mr. Peterson, was employed by Extremity Medical from at least 2011 to 2019, as a sales representative. ECF 1 at ¶ 15. This time period includes at least about five years when Mr. Peterson was also growing Fusion, another orthopedics medical device company, while actively selling Extremity Medical products in the same market space, at the same time. ECF 1 at ¶ 15; ECF 30 at 3. As a sales representative employed by Extremity Medical, Mr. Peterson received detailed information from Extremity Medical about Extremity Medical's products, including Extremity Medical's IOFiX line of products. *Id.*

Extremity Medical's IOFiX Plus and IOFiX 2.0 products are assemblies for bone fusion including a first member comprising a shaft and a head; a thread extending outward from the external surface of the shaft; and a second member comprising an elongated body having a bore extending from an aperture at a terminal end of the elongated body to another aperture on an exterior surface of the second member, wherein the first member couples to the second member by inserting one end of the first member into the first aperture, through the bore, and out of the second aperture. Those elements are also included in Fusion's IntraLock product.

The similarity between Fusion's IntraLock product and Extemity Medical's IOFiX 2.0 product can be seen in the figures below:

| |  |
|---|---|
| **Fusion’s IntraLock** | **Extremity Medical’s IOFiX 2.0** |

Fusion has also used Extremity Medical’s products as predicate devices to obtain clearance from the U.S. Food and Drug Administration for Fusion products. ECF 1 at ¶ 17.

On December 16, 2022 – nine months ago – the Court entered a Case Management Order setting dates for, *inter alia*, infringement contentions, invalidity contentions, claim construction briefing, and a *Markman* Hearing. ECF 49. On July 10, 2023 and July 28, 2023, the Court further set deadlines for expert reports, completion of expert discovery, and filing dispositive motions all of which are set to occur by January 12, 2024. *See* ECF 74 and 76.

Extremity Medical filed its Opening Claim Construction Brief on April 7, 2023 (ECF 60), Fusion filed its Responsive Claim Construction Brief on May 12, 2023 (ECF 63), and Extremity Medical filed its Reply Brief on June 13, 2023 (ECF 68). The *Markman* Hearing was held on June 22, 2023, and the Court issued a *Markman* Order on July 7, 2023. *See* ECF 73.

In the middle of the parties’ Claim Construction briefing, Fusion filed its IPR Petition on April 28, 2023 (the deadline for it to do so), requesting that the PTAB institute a proceeding to review the ’166 Patent. On May 23, 2023, still well before the *Markman* Hearing, the PTAB issued a Notice of Filing Date Accorded to Petition. That Notice set August 23, 2023 as the deadline for Extremity Medical’s optional Preliminary Response to the Petition. *See* ECF 77, Exhibit B. The PTAB will issue its institution decision in about three months after it receives Extremity Medical’s Preliminary Response, or around November 23, 2023. *See* 35 U.S.C. §

314(a)–(b). Over three months after filing its IPR Petition, Fusion filed the Motion for Stay on August 3, 2023. *See* ECF 77.

## III. LEGAL STANDARDS

### A. *Inter Partes* Review

Once a petition for IPR has been filed, the patent owner has the right to file an optional preliminary response opposing the request within three months. *See Polaris Innovations, Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC(RAOx), 2016 U.S. Dist. LEXIS 186795, at *3 (C.D. Cal. Nov. 17, 2016) (*citing* 35 U.S.C. § 313, 37 C.F.R. § 42.107(b)). The Patent Trial and Appeal Board ("PTAB") then has three months to determine whether to institute an IPR proceeding, which it can do if it concludes "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *See Id.* (*citing* 35 U.S.C. § 314(a)–(b)). If the PTAB institutes an IPR proceeding, it must provide a written decision within one year, with a further six-month extension possible "for good cause shown." *See Id.* (*citing* 35 U.S.C. § 316(a)(11)). After the PTAB issues its written decision, the petitioner is estopped from raising any invalidity arguments "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C § 315(e)(2). A party may appeal the PTAB's final written decision to the Federal Circuit Court of Appeals. *See* 35 U.S.C. § 141.

### B. Motion to Stay

"Courts have inherent power to manage their dockets and stay proceedings," "including the authority to order a stay pending conclusion of a [Patent Office proceeding]." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). The Court's authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). However, "a court is under no obligation to delay its own proceedings by yielding to ongoing PTAB [proceedings]—even if the [proceedings] are relevant to the infringement claims before the Court." *Speakware, Inc. v. Microsoft Corp.*, No. SA CV 18-1293-DOC (DFMx), 2019 U.S. Dist. LEXIS 74579, at *6 (C.D. Cal. Feb. 21, 2019). "There is no per se rule that patent cases

should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." *Tokuyama Corp. v.Vision Dynamics, LLC*, No. 08-cv-2781-SBA, 2008 U.S. Dist. LEXIS 82732, 2008 WL 4452118, at *2 (N.D.Cal. Oct. 3, 2008); *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

In deciding whether to stay a litigation, a court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. "The moving party has the burden to persuade the court that a stay is appropriate." *Drink Tanks Corp. v. Growlerwerks, Inc.*, No. 3:16-cv-410-SI, 2016 U.S. Dist. LEXIS 91964, at *5 (D. Or. July 15, 2016) (citing *Netlist, Inc. v. Smart Storage Sys., Inc.*, 2014 U.S. Dist. LEXIS 116979, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014)). The party requesting a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Landis*, 299 U.S. at 255.

When determining whether a stay requested by an alleged infringing party should be granted pending the completion of *inter partes* review, district courts typically consider the following factors: "(1) the stage of the litigation; (2) whether a stay will simplify the issues; and (3) whether a stay would unduly prejudice the non-moving party." *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV 12-01861 JGB (MLGx), 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013); *accord Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013). The inquiry, however, is not limited to these three factors; "the totality of the circumstances governs." *Universal Elecs.*, 943 F. Supp. 2d at 1031 (citation omitted).

Many courts deny motions to stay as premature if the PTAB has not yet granted a petition for review, while also expressly permit the moving party to refile for a stay if the PTAB later accepts review of relevant patent claims. *Drink Tanks*, 2016 U.S. Dist. LEXIS 91964, at *11 (*citing Trover Grp., Inc. v. Dedicated Micros USA*, 2015 U.S. Dist. LEXIS 29572, 2015 WL 1069179, at *1 (E.D. Tex. Mar. 11, 2015); *SAGE Electrochromics, Inc. v. View, Inc.*, 2015 U.S. Dist. LEXIS 1056, 2015 WL 66415, at *5 (N.D. Cal. Jan. 5, 2015); *Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 U.S. Dist. LEXIS 5186, 2014 WL 201965, at *1 (N.D.N.Y. Jan. 15, 2014);

*Unwired Planet, LLC v. Square, Inc.*, 2014 U.S. Dist. LEXIS 140831, 2014 WL 4966033, at *5-6 (D. Nev. Oct. 3, 2014); *Netlist, Inc. v. Smart Storage Sys., Inc.*, 2014 U.S. Dist. LEXIS 116979, 2014 WL 4145412, at *3 (N.D. Cal. Aug. 21, 2014)). This approach "appears to be the one chosen by the majority of courts that have considered the issue." *Id.* This makes logical sense because until the PTAB decides to open an inquiry into the relevant patent claims, there is no chance that any of the alleged efficiencies in letting the PTAB go first will be realized.

## IV. ARGUMENT

The cases cited by Fusion in which a stay was granted pending a final written decision in an IPR are distinguishable for at least one of several reasons: (1) those cases were at a far earlier stage than this case and no *Markman* Order had been issued, (2) the PTAB had already instituted and decided to move forward with an IPR or reexamamination ("reexam") proceeding, so there was far more certainty concerning whether the proceeding could simplify the issues in the corresponding district court case, and/or (3) the parties were not competitors and there was no significant risk of undue prejudice, which there is here. *See Caron v. QuicKutz, Inc.*, No. CV-09-02600-PHX-NVW, 2010 U.S. Dist. LEXIS 137786 (D. Ariz. Dec. 15, 2010) (reexam proceeding already instituted); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 U.S. Dist. LEXIS 178547, at *4 (N.D. Cal. Dec. 18, 2013) (no *Markman* Order prior to stay; parties not competitors); *Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, No. CV-17-03125-PHX-DWL, 2018 U.S. Dist. LEXIS 202071, at *3 (D. Ariz. Nov. 29, 2018) (no *Markman* Order prior to stay; IPR instituted prior to stay); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 U.S. Dist. LEXIS 4095, at *10 (N.D. Cal. Jan. 13, 2014) (IPRs instituted prior to stay; parties not competitors); Pilot (I – 6/10/21) (D. AZ) (no *Markman* Order issued prior to stay; parties not competitors); *SynKloud Techs. LLC v. Aesthetics Biomedical Inc.*, No. CV-22-00015-PHX-DLR, 2022 U.S. Dist. LEXIS 127958, at *2 (D. Ariz. July 18, 2022) (no *Markman* Order issued prior to stay); Target v. SciMed (NDCA, 1995) (no *Markman* Order issued prior to stay; reexam instituted prior to stay); *VPR Brands LP v. Jupiter Rsch. LLC*, No. CV-20-02185-PHX-DJH, 2022 U.S. Dist. LEXIS 81835, at *3 (D.

Ariz. May 5, 2022) (no *Markman* Order issued prior to stay; record did not show parties were competitors).

Indeed, the cases cited by Fusion in which a motion to stay was *denied* are more closely aligned with the facts of this case. *See, e.g.*, *Drink Tanks Corp. v. Growlerwerks, Inc.*, No. 3:16-cv-410-SI, 2016 U.S. Dist. LEXIS 91964, at *6 (D. Or. July 15, 2016). In *Drink Tanks*, like here, the IPR had not yet been instituted when the stay was requested and the parties were direct competitors. *Drink Tanks*, 2016 U.S. Dist. LEXIS 91964 (D. Or. July 15, 2016). A *Markman* Order had not yet been issued, so there was slightly less reason to deny a stay in *Drink Tanks*. The Court denied the movant's request to stay anyway, without prejudice and with leave to re-file the motion to stay if the PTAB instituted the IPR proceeding.

Here, a proper balancing of the three stay factors weighs against Fusion's request for a stay, at least until the PTAB decides whether an IPR proceeding will be instituted.

**A. Factor #1 – Stage of the Litigation**

The parties have already expended non-trivial resources into this litigation, which counsels against a stay. *See Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SACV 16-00300-CJC (RAOx), 2016 WL 7496740, at *2 (C.D. Cal. Nov. 17, 2016). According to Fusion, "[d]iscovery is in its early stages." ECF 77 at 4. This is wrong. Extremity Medical has served infringement contentions, Fusion has served invalidity contentions, Extremity Medical completed its production of documents, and Fusion was recently ordered to produce any remaining documents by August 16, 2023. *See* ECF 49, 72. The close of fact discovery, other than depositions, is August 25, 2023. *See* ECF 74, 76. Fact depositions are scheduled to be completed about four weeks from now, by September 22, 2023. *See id.*

In comparison, we will not even know if the PTAB will institute Fusion's proposed IPR until November 23, 2023, about three months from August 23, 2023, the date Extremity Medical will file its preliminary response in the IPR. This is after the scheduled deadline for expert reports (November 7, 2023) and the parties will already be working toward full completion of expert discovery (the deadline is December 15, 2023), and preparing dispositive motions (due by January 12, 2024). *See* ECF 74, 76. Even then, assuming *arguendo* that the IPR proceeding

is instituted in November 2023, a Final Written Decision will not likely issue until one year from that point, or around November 2024. *See* 35 U.S.C. § 316(a)(11).

Apart from the timing issues generally, a stay should be denied here because the Court has "substantially intervened in the action . . . by conducting a Markman hearing [and] issuing a claim construction order." *Evolutionary Intelligence*, 2013 U.S. Dist. LEXIS 178547, at *13; *Interwoven, Inc. v. Vertical Comput. Sys.*, No. C 10-04645 RS, 2012 U.S. Dist. LEXIS 30946, at *11 (N.D. Cal. Mar. 8, 2012) (stay denied because the parties had fully briefed claim construction, attended a Markman hearing, and received a claim construction order). "Both the parties and the Court have expended sufficient resources and time to render a stay untenable at this point." *Interwoven*, 2012 U.S. Dist. LEXIS 30946, at *12.

Accordingly, this factor weighs against granting a stay.

**B. Factor #2 – Simplification of Issues in Question**

Generally, "the stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for inter partes review was filed." *Polaris*, 2016 U.S. Dist. LEXIS 186795, at *5 (internal quotation marks omitted) (collecting cases). This is because a "[c]ourt cannot know . . . whether granting a stay would lead to more or less judicial efficiency" before the Patent Trial and Appeal Board issues an institution decision. *Carl Zeiss A. G. v. Nikon Corp.*, No. 2:17-cv-03221-RGK-MRW, 2018 U.S. Dist. LEXIS 199080, at *8-9 (C.D. Cal. Feb. 9, 2018) The PTAB may in fact not institute the IPR, and if that is what happens, the stay would needlessly delay this litigation and complicate matters further. *See id*.

There is also no guarantee that an IPR proceeding, even if instituted, would simplify all (or even some) of the issues in question. According to Patent Office statistics, only "12% of patents with proceedings ending in [Fiscal Year 2022] were fully invalidated by PTAB." See Ex. 1 at 15.

The timing of the motion is a significant driver toward denial of the motion here, and it impacts factor 2 as well. Courts have found the second factor weighs against a stay (or is neutral at best) when the PTAB's institution decision has not yet been made and is likely to be received after the close of fact discovery, which is the case here. *See, e.g., Freeny v. Apple Inc.*,

2014 WL 3611948, at *2 (E.D. Tex. July 22, 2014) ("the 'simplification' issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review."); *Pragmatus Mobile, LLC v. Amazon.com, Inc., et al.*, C.A. No. 14-436-LPS (E.D. Del. June 17, 2015), at 2-3. As noted by one court in this Circuit:

> [T]he PTAB has not decided whether to institute IPR, and need not do so until May 14, 2020—almost two full months after the close of discovery set by this Court's scheduling order. Thus, while the IPR might simplify this proceeding if it were instituted, there is also a significant chance that the PTAB will decide not to institute IPR, and this Court will have thrown off the entire scheduling of this case for no benefit. This factor also weighs against granting a stay.

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.*, No. SA CV 18-2043-DOC (ADSx), 2020 U.S. Dist. LEXIS 80901, at *4-5 (C.D. Cal. Jan. 13, 2020) (emphasis in original).

There are also compelling reasons to believe that the IPR, even if instituted, will not simplify the issues in this case because the patent will survive fully intact. Fusion incorrectly claims that its IPR "is based [on] several of the prior art references cited by Fusion in its Invalidity Contentions and *not previously addressed by the patent examiner* during the original prosecution of the '166 Patent." Fusion Motion at 3 (emphasis added). However, one of the two primary references cited by Fusion was, in fact, disclosed to the Patent Office during prosecution, and the '166 Patent was issued over that reference. There is no reason a different result should be expected now.

Putting aside the substance of the IPR petition and the timing issues with the motion to stay, the PTAB might choose not to institute the IPR simply because of the timing of the filing *of the IPR*. "The advanced state of a parallel district court action may warrant exercising discretion on behalf of the Director to deny a petition for inter partes review." *Vector Flow, Inc. v. Hid Glob. Corp.*, No. IPR2023-00353, 2023 WL 5167491, at *5 (P.T.A.B. July 17, 2023) (citations omitted). Fusion's decision to file its IPR Petition a year after it could have originally chosen to do so while this litigation proceeded through fact discovery and claim construction could cause the IPR to not be instituted for that reason alone. This additional potential

foundation for a refusal to institute the IPR is more reason not to order a stay, at least until the parties and the Court learn whether the IPR will proceed; there are several reasons it might not.

Because the parties are months away from any institution decision, and "any simplification [of the action] as a result of PTAB proceedings is inherently speculative," this factor weighs against granting a stay. *Speakware, Inc. v. Microsoft Corp.*, No. SA CV 18-1293-DOC (DFMx), 2019 U.S. Dist. LEXIS 74579, at *8 (C.D. Cal. Feb. 21, 2019).

**C. Factor #3 – Undue Prejudice or Clear Tactical Advantage**

When defendants move for a stay pending reexamination, they almost always intend such a stay to prejudice plaintiffs and hand them a tactical disadvantage. So the question is whether the prejudice is "undue" or whether the tactical disadvantage is "clear." *Caron v. QuicKutz, Inc.*, No. CV-09-02600-PHX-NVW, 2010 U.S. Dist. LEXIS 137786, at *3 (D. Ariz. Dec. 15, 2010) (granting renewed motion to stay after denying previous motion because the IPR was not instituted). In evaluating prejudice, Court usually consider four sub-factors: "(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." *GoPro, Inc. v. C&A Mktg.*, No. 16-cv-03590-JST, 2017 U.S. Dist. LEXIS 92480, at *12 (N.D. Cal. June 15, 2017). Each of those sub-factors weighs against granting a stay.

**1. Timing of the IPR Petition**

Fusion's 365-day delay in filing its IPR Petition on the absolute deadline to do so disfavors a stay. *See, e.g., Fulfillium, Inc. v. ReShape Med., LLC*, No. 2:17-cv-08419-RGK-PLA, 2018 U.S. Dist. LEXIS 229793, at *7 (C.D. Cal. June 4, 2018) ("The Court agrees that ReShape's decision to wait until the final hour to petition for IPR strongly suggests gamesmanship."). When a defendant "desires a stay [based on the potential PTAB proceeding] it should endeavor to minimize prejudice to a plaintiff, by diligently conducting a prior art search, and then drafting and filing an inter partes review petition if it desires to do so." *Wonderland Switz. AG v. Britax Child Safety, Inc.*, Civil Action No. 0:19-cv-02475-JMC, 2020 U.S. Dist. LEXIS 226315, at *12-13 (D.S.C. Dec. 2, 2020) (*citing Signal IP, Inc. v. Ford Motor Co.*, No. 14-cv-13729, 2015 WL 5719671, at *6 (E.D. Mich. Sept. 30, 2015)). Here, Extremity

Medical "will be prejudiced by a stay because it has a legitimate interest in the timely enforcement of its patent rights." *Id.*

Fusion's wait to file the IPR Petition until the last possible moment weighs against granting a stay.

**2. Timing of the Request for Stay**

Fusion not only waited until the last possible day to file its IPR Petition, it subsequently waited over three months before filing a motion to stay this case in view of that Petition. Fusion provides no explanation for this unjustifiable delay. *See Realtime Data LLC v. Actian Corp.*, No. 6:15-CV-463-RWS-JDL, 2016 U.S. Dist. LEXIS 77566, at *14-15 (E.D. Tex. June 14, 2016) (stay denied without prejudice because all Defendants waited between seven and eleven months to file their IPR petitions and between one month and seven months after the petitions to file a motion to stay, demonstrating lack of diligence, with no attempt to provide an explanation for this "unjustifiable delay").

In *Universal Remote*, the Defendant appears to have waited to file its IPR in order to see whether the district court issued a favorable claim construction first, which is exactly what Fusion did here. *Universal Remote*, 943 F. Supp. 2d at 1034 (noting that defendant's delay in filing "appears to have been to obtain the Court's claim construction before filing its inter partes review petitions, perhaps to see if they were necessary. . . ."). That strategy "negatively impacted the likelihood that [the] motion would be granted" in *Universal Remote*, and the same should hold true here. *Id.*

**3. Status of the IPR Proceeding**

Because the PTAB will not institute the IPR, if it chooses to do so, until November 2023, the status of the IPR proceeding relative to the timing of the request for a stay supports a finding of prejudice. *GoPro,* 2017 U.S. Dist. LEXIS 92480, at *5. Courts have concluded that this sub-factor weighs against issuing a stay when the PTAB has not yet decided whether to institute an IPR. *See, e.g.,* GoPro, Inc. v. C&A Mktg., No. 16-cv-03590-JST, 2017 U.S. Dist. LEXIS 92480, at *15 (N.D. Cal. June 15, 2017) (citing *SAGE Electrochromics*, 2015 U.S. Dist. LEXIS 1056, 2015 WL 66415 at *4; *TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-

02218-JST, 2013 U.S. Dist. LEXIS 162521, at *15 (N.D. Cal. Nov. 13, 2013). Accordingly, given that the PTAB has not instituted an IPR proceeding, this sub-factor weighs against granting a stay.

**4. Relationship of the Parties**

When parties to patent infringement cases are direct competitors, courts generally "presume that a stay will prejudice the non-movant." *Drink Tanks*, 2016 U.S. Dist. LEXIS 91964, at *14 (D. Or. July 15, 2016) (quoting *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011)). When the parties directly compete against each other for market share, "infringement causes 'harm in the marketplace that is not compensable by readily calculable money damages.'" *Id.* (*quoting Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, 2011 U.S. Dist. LEXIS 82665, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011). "Staying a case while such harm is ongoing can cause prejudice to the patent owner 'that seeks timely enforcement of its right to exclude.'" *Id.* Further, because the one-year deadline for the PTAB's final decision could be extended by six months for good cause, and "[t]he delay could be further exacerbated if Defendants invoke their right to appeal the PTAB's decision to the Federal Circuit, . . . [s]uch a lengthy delay will result in significant prejudice to [Extremity Medical] and, therefore, this factor weighs against a stay. *Realtime Data LLC v. Actian Corp.*, No. 6:15-CV-463-RWS-JDL, 2016 U.S. Dist. LEXIS 77566, at *13 (E.D. Tex. June 14, 2016).

**V. CONCLUSION**

Under the totality of the circumstances, staying this case "based on nothing more than the fact that a petition for inter partes review was filed" would cause unreasonable delay and undue prejudice to Extremity Medical and thus would be contrary to the "just, speedy, and inexpensive determination" of this action. *Speakware*, 2019 U.S. Dist. LEXIS 74579, at *8; Fed. R. Civ. P. 1. Extremity Medical respectfully requests that the Court deny Fusion's Motion to Stay. Although Extremity Medical contends that there are reasons espoused herein that would support denying Fusion's stay request even if the IPR was already instituted, Extremity Medical respectfully submits that it would accept a denial of the motion without prejudice to refile it if the IPR is instituted as an acceptable resolution here.

DATED: August 17, 2023

By /s/ Michael J. Zinna

**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
mzinna@kelleydrye.com
David Lindenbaum (admitted *pro hac vice*)
dlindenbaum@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**LANG & KLAIN, P.C.**
6730 N. SCOTTSDALE RD., SUITE 101
SCOTTSDALE, ARIZONA 85253
TELEPHONE (480) 534-4900
***Please e-serve filings on:***
***Filing@lang-klain.com***

WILLIAM G. KLAIN, #015851
wklain@lang-klain.com *(not for e-service)*

*Attorneys for Plaintiff Extremity Medical, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true and correct copy of the foregoing document was served on counsel for Defendant by electronic mail.

Dated: August 17, 2023

By /s/ David Lindenbaum

**KELLEY DRYE & WARREN LLP**
David Lindenbaum (admitted *pro hac vice*)

*Attorneys for Plaintiff Extremity Medical, LLC*