**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
mzinna@kelleydrye.com
Abhishek Bapna (admitted *pro hac vice*)
abapna@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**FENNEMORE CRAIG, P.C.**
William G. Klain
Zachary W. Rosenberg
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
(602) 916-5000
wklain@fennemorelaw.com
zrosenberg@fennemorelaw.com

*Attorneys for Plaintiff Extremity Medical, LLC*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Extremity Medical, LLC,<br><br>              *Plaintiff,*<br><br>          v.<br><br>Fusion Orthopedics, LLC,<br><br>              *Defendant.* | Case No.:  2:22-cv-00723-PHX-GMS<br><br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR EXTENSION OF THE DEADLINE FOR INVALIDITY CONTENTIONS** |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '166 Patent | U.S. Pat. No. 11,298,166 |
| Fusion | Defendant Fusion Orthopedics, LLC |
| IPR | *Inter Partes* Review Case No. IPR2023-00894 |
| LCP | LCP Periprosthetic System |
| Leu | U.S. Pat. No. 6,270,499 |
| Mazur reference or Mazur | U.S. Pat. Appl. No. 2011/0087227 |
| N.D. Cal. Pat. L.R. | Northern District of California Patent Local Rule(s) |
| Patent Office | U.S. Patent & Trademark Office |
| PTAB | Patent Trial and Appeal Board |
| Rule 26 | Federal Rule of Civil Procedure 26 |
| Rule 45 | Federal Rule of Civil Procedure 45 |
| Simon Provisional | U.S. Pat. Appl. No. 60/402,380 |
| Synthes Chart | Synthes Screw Reference Chart |
| XM | Plaintiff Extremity Medical, LLC |

## I.  INTRODUCTION

Invalidity contentions were due in this case by Feb. 17, 2023 - more than two years ago. Fusion's obligation by Feb. 17, 2023 was to identify all prior art on which they intended to rely in this case.  By its own admission, Fusion did not fully complete this task by that deadline. Instead, Fusion filed two supplements to its invalidity contentions well after Feb. 17, 2023, the first on Oct. 30, 2023 (the "Oct. 2023 Supplement") – *more than nine months late* – and the second on May 19, 2025 (the "May 2025 Supplement") – *more than 28 months late* – without seeking or obtaining leave for either supplementation.  The Court instructed Fusion on June 12, 2025 that it would need to file a motion for leave if Fusion wanted the Court to consider whether to allow the supplements.  After waiting another 18 days, Fusion filed the present Motion asking the Court to retroactively extend the deadline for Invalidity Contentions to May 19, 2025, the date of Fusion's May 2025 Supplement.

Fusion's central argument seems to be that it "fully expected" that the patent-in-suit, the '166 Patent was going to be completely invalidated in the *Inter Partes Review* proceeding that Fusion filed against the '166 Patent on April 28, 2023.  But that IPR concluded with Claim 11 of the '166 Patent surviving in November 2024, which sent Fusion scrambling.  So, if we just call the situation what it really is – Fusion did not do its job of serving complete invalidity contentions in Feb. 2023 fully or correctly, because it made the assumption that it would never need to look for a more robust set of prior art (including system art and other references that it could not use or did not plan to use in the IPR, but which existed and were easy to find by Feb. 2023), since Fusion felt confident it would prevail in the IPR and would not need those additional references.  Fusion was wrong.  And unfortunately for Fusion, its obligation by the Feb. 2023 deadline was to disclose *all* of the prior art, not just some of it, and not just art that it felt might be useful in its IPR.

It is far too late for this extension.  There is simply no reason that Fusion could not have discovered the prior art it seeks to add via its supplementations through a diligent search before February 17, 2023.  The Mazur reference and the three physical prior systems that Fusion is

most concerned with adding to its contentions (Gotfried, Phoenix, and Foresight, collectively the "Physical Prior Art Systems") have been in the public domain since at least *as early as 2011*.

The Motion should be denied because Fusion has not shown and cannot show "good cause" *and* that its delay in incorporating these references into its contentions was caused by "excusable neglect," both of which are required here.

Fusion cannot establish "good cause" for the extension. The law is clear (and Fusion appears to agree) that in determining "good cause," its own diligence is the main factor. It is not XM's burden to show a lack of diligence. If Fusion cannot establish diligence, the Motion must be denied (even if there is <u>no</u> prejudice to XM). That said, XM would, in fact, be prejudiced.

Because the Motion comes after the deadline has passed, Fusion must also affirmatively establish "excusable neglect" (it is not XM's burden to show the absence of excusable neglect). The Motion does not even address three of the four factors that go into a proper excusable neglect analysis, so Fusion has now waived its right to argue that those factors support a finding of excusable neglect. This alone is enough to deny the Motion.

The Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

1.      On April 28, 2022, XM filed its complaint in this case against Fusion, asserting infringement of the '166 Patent by Fusion's IntraLock system. ECF 1.

2.      On Dec. 9, 2022, the parties filed a joint proposal agreeing on several deadlines, including a February 17, 2023 deadline for Fusion to serve its Invalidity Contentions. *See* ECF 44, p. 9. On Dec. 16, 2022, this Court entered its Case Management Order ordering these agreed-to deadlines. *See* ECF 49.

3.      On Feb. 17, 2023, Fusion served its Invalidity Contentions as it was required to do under the agreed-upon schedule. *See* Ex. C.

4.      On Feb. 24, 2023, the parties exchanged proposed terms for construction, and the claim construction process culminated with the Court holding a *Markman* Hearing on June 22, 2023 and entering its *Markman* Order on July 7, 2023. *See* ECF 49, p. 2; ECF 73.

5.      On April 28, 2023, Fusion filed an IPR seeking to invalidate all claims of the '166 Patent.  *See* ECF 77, p. 2.

6.      On Oct. 30, 2023, Fusion served the Oct. 2023 Supplement.  *See* Ex. D.  This was approximately nine months after the deadline.  Fusion did not seek or receive leave to supplement its Invalidity Contentions.

7.      On Nov. 17, 2023, the PTAB instituted the IPR.  *See* ECF 95.

8.      On Dec. 1, 2023, XM served its validity expert report in this case.  *See* ECF 84.

9.      On Dec. 12, 2023, the Court stayed this action pending the outcome of the IPR.  *See* ECF 107.

10.     On August 7, 2024, Fusion asserted the Mazur reference in the IPR in response to proposed claim amendments.  *See* Ex. A, p. 2.  The reference had published as a U.S. patent application on April 14, 2011.  *See id.* at 2, n.11.

11.     On Nov. 4, 2024, the PTAB issued its Final Written Decision in the IPR.  *See* ECF 116, p. 1.  Claim 11 of the '166 Patent survived the IPR.  *Id.*

12.     On Dec. 13, 2024, Fusion requested the Patent Office institute an *ex parte* reexamination of claim 11 of the '166 Patent based on Mazur.  *See* ECF 116-1.

13.     On Feb. 21, 2025, the Patent Office rejected Fusion's request for an *ex parte* reexamination, finding that Fusion was estopped from requesting the reexamination.  *See* Ex. A, p. 8.  The Patent Office's rationale was that "a skilled searcher conducting a diligent search reasonably could have been expected to discover the Mazur reference and assert it when initially filing the ['166 Patent] IPR petition [April 28, 2023]."  *Id.* at 7.

14.     On March 18, 2025, the Court lifted the stay in this case.  *See* ECF 119.

15.     On April 22, 2025, the Court ordered the parties to complete fact and expert discovery by July 25, 2025.  *See* ECF 121.  That date has since been extended by agreement to Aug. 29, 2025.  *See* ECF 126.

16.     On May 19, 2025, Fusion served its May 2025 Supplement.  *See* ECF 124-1.  Fusion again failed to seek or obtain leave to serve the supplement.

17.     On May 23, 2025, XM objected to the May 2025 Supplement on the ground that it was untimely.  *See* Ex. E.  Fusion refused to seek leave to supplement its Invalidity Contentions at that time, nor would it agree that the May 2025 Supplement was untimely, despite being served more than two years after the deadline.  XM raised the timeliness issue with the Court.

18.     On June 12, 2025, the Court held a telephonic dispute conference and ordered: "Should Fusion desire a modification of the Court's scheduling order pertaining to invalidity contentions, it must file a motion pursuant to Fed. R. Civ. P. 16(a)(4)."  *See* ECF 123.

19.     On June 30, 2025 Fusion filed the present Motion.

## III.   LEGAL STANDARDS

"A schedule may be modified only for good cause . . . ."  Fed. R. Civ. P. 16(b)(4).  The good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations,* 975 F.2d 604, 609 (9th Cir. 1992).  "Although the existence or degree of prejudice to the party opposing the modification *might* supply additional reasons to deny a motion, *the focus of the inquiry is upon the moving party's reasons* for seeking modification.  *If that party was not diligent, the inquiry should end*."  *Id.* (emphasis added) (internal citation omitted); *see also*, *e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006); *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14-cv-00126, 2016 U.S. Dist. LEXIS 14279, at *17 (D. Ariz. Feb. 5, 2016).

When a movant seeks to extend a deadline that has already passed, it must also show "excusable neglect."  *See* Fed. R. Civ. P. 6(b)(1)(B); *Brightly v. Corizon Health Inc.,* No. 21-cv-00127, 2023 U.S. Dist. LEXIS 16198, at *3 (D. Ariz. Jan. 31, 2023).  "Four factors determine whether neglect is excusable: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the proceedings; (iii) the reason for the delay; and (iv) whether the movant acted in good faith."  *Id.* at *3.

## IV.   ARGUMENT

Fusion has not shown good cause (which it has the burden of showing by illustrating its own diligence) or excusable neglect here.

**A.    Fusion Has Not Shown and Cannot Show That "Good Cause" Exists To Extend the Deadline for Invalidity Contentions Here, or to Allow Either of its Late Supplements**

**1.    Fusion Has Not Met Its Burden To Establish Its Diligence**

In a patent case, "[t]he party seeking to amend its contentions bears the burden of establishing diligence.  The moving party must establish diligence in two distinct phases: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *In re Koninklijke Philips Patent Litig.*, No. 18-cv-01885, 2019 U.S. Dist. LEXIS 93573, at *7 (N.D. Cal. June 4, 2019) (internal quotations and citation omitted).  Here, Fusion has not met its burden to establish diligence in either phase.

Regarding Fusion's diligence in looking for the bases/prior art it included in its supplementations, in the first place, before the original deadline, the salient question is really whether/why this art could not have been or was not found by Fusion before the deadline of Feb. 17, 2023.  Fusion does not argue that the art was not publicly available, which it was.  Fusion does not argue that there would have been some particular hardship with finding it, because there wasn't any.  Indeed, Fusion is pretty blunt about why it only found the art recently – Fusion didn't think it would need this art because it believed it would obtain a complete win in the IPR.  Fusion says that it "fully expected that claim 11 would be found invalid just as all of the other claims of the '166 patent based on the prior art references cited in its original Invaldity Contentions." Mot, p. 6.  Essentially, Fusion focused on searching for IPR-worthy art before Feb. 2023, but its obligation *in this case* was more than that: to disclose all prior art it intended to rely on at the district court.  Fusion does not even argue that it was diligent in fully meeting this obligation, instead it conflates what it was supposed to do (find and disclose all that existed as of Feb. 17, 2023 that it may have wanted to use here), with what it actually did (cut corners and only look for art that it could use in its IPR).  Indeed, the Motion does not address any alleged diligence before November 2024.

Of the four references Fusion is most concerned about adding to its contentions now, Fusion admits that the Physical Prior Art Systems were on sale prior to June 23, 2009.  *See*

Mot., p. 4; ECF 1-2, p. 3 of 82 (claiming priority to U.S. Patent Appl. No. 12/456,808, filed on June 23, 2009). The fourth reference, Mazur, was published as a U.S. patent application on April 14, 2011. *See* Ex. A, p. 2, n.11. So all four of these prior art items had been in the public domain for at least about a dozen years before the February 17, 2023 Invalidity Contentions deadline, and could have been found by a diligent search. Fusion does not argue otherwise, and provides no reason why it could not and did not find them sooner, other than that it stopped short of truly diligently looking for prior art when it felt it had what it needed for the IPR. But its obligation *in this case*, by the deadline of Feb. 17, 2023, was broader than that – it was supposed to disclose all art that it planned to use in this case. Fusion does not even attempt to argue that it diligently tried to meet this obligation.

As to its diligence in seeking supplementation once it finally looked for and discovered the bases for its supplementations, Fusion does not fully address this. Fusion does not provide the timing of its supplementations relative to when it discovered the four "new" prior art references it focuses on in the Motion, or the other art and arguments in either the Oct. 2023 or May 2025 Supplements. This deficiency alone constitutes sufficient grounds to deny the Motion in full. At least as to Mazur, it is not in dispute that Fusion was aware of Mazur no later than August 7, 2024, when it asserted the reference in the IPR. *See id.* at 2. Yet, Fusion did not serve its Second Supplemental Invalidity Contentions until May 19, 2025 and did not file the present Motion until June 30, 2025.

Regarding the affirmative arguments Fusion makes related to its diligence, or frankly, its excuses for a lack of diligence:

*First*, as noted above, Fusion argues that the reason it had not identified or otherwise asserted the three "new" prior art systems here, prior to the filing of the IPR, was that Fusion could not have asserted this prior art in the IPR. *See* Mot., pp. 4-5. But what Fusion *could or could not have raised in the IPR* bears no relevance to what Fusion was *required to do in this case* by the February 17, 2023 deadline, which was to identify *all* prior art it may rely on *in this case*. Importantly, Fusion's obligation here was to identify not only patents and printed

publications, but also physical systems (if it wanted to rely on them here), despite the fact that the latter cannot be used in an IPR. Fusion knew (or at least should have known, since it is represented by patent counsel) *what it needed to do in this case* by the February 17, 2023 deadline reached beyond *what it could do in the IPR*. There is no reason Fusion could not have identified *all* prior art it wanted to rely on by February 17, 2023.

*Second*, regarding estoppel due to the IPR, Fusion argues that after the IPR was concluded, XM "raised potential estoppel arguments" which caused Fusion to find it necessary to find additional prior art. Mot., p. 5. Put another way, it was only after Fusion lost the IPR that it decided to put in the time and effort into looking for the full set of prior art it should have found initially (before Feb. 2023) because it was only at that point that it was in need of art that it never could have used in the IPR, so that's when Fusion went looking for it. But it should have hedged this bet before Feb. 2023, when it was supposed to do so, by disclosing all of the art it planned to ever use if this case came back to the district court after the IPR. Fusion knew (or should have known) in Feb. 2023 that if the case lasted beyond the IPR, it might want to be in a position to rely on physical prior art systems or other references not used in the IPR, and should have accounted for that back then.

Fusion cites *Ingenico Inc. v. Ioengine, LLC*, 136 F.4th 1354, 1367 (Fed. Cir. 2025). *Ingenico* merely resolved a split of authority as to whether IPR estoppel applies to a physical prior art system that could not itself be raised in an IPR, but which was described in a printed publication (*e.g.*, a product/user manual or guide), which could be raised in an IPR. *Id.* at 1364. The facts of *Ingenico* are inapposite here; Fusion has not asserted that the three Physical Prior Art Systems were actually described in a prior art printed publication such that there would even be a factual basis to find that estoppel might extend to these prior art systems. Nor has Fusion advanced any legal basis to find that any uncertainty regarding this Court's application of IPR estoppel to physical prior art systems relieved Fusion of its duty of diligence before the Feb. 2023 deadline. Again, there is no reason Fusion could not have identified *all* prior art it wanted to rely on here by February 17, 2023.

1
2
3
4
5

*Third*, specifically as to the Mazur reference, Fusion argues that it found the reference through an additional prior art search during the IPR. Fusion does not (and cannot) explain why it could not have performed the same "additional search" before February 17, 2023. The Mazur reference was readily available through electronic searches of the U.S. patent database since the Mazur application was published on April 14, 2011.[1]

6
7
8
9

*Fourth*, Fusion argues that "the Court entered an Order [(ECF 121)] allowing the parties to conduct additional discovery and supplement their expert reports based on the results of the IPR." Mot., p. 4. This is a red herring. The Court never extended the February 17, 2023 deadline; Fusion never asked it to do so.

10
11
12
13
14
15
16
17
18
19
20

The Northern District of California denied a similar motion on very similar facts as those here. *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-cv-04738, 2020 U.S. Dist. LEXIS 4645, at *4-5 (N.D. Cal. Jan. 9, 2020). In *Contour IP*, after the invalidity contentions deadline had passed, the PTAB instituted an IPR, the case was stayed, the IPR was concluded with surviving claims, defendant searched for prior art systems at that point, the stay was lifted, defendant served amended invalidity contentions adding physical prior art systems 18 months after the deadline, and defendant also served subpoenas to third parties seeking additional evidence of invalidity. *Id.* The court denied the motion for leave to amend the invalidity contentions because the motion made no attempt to explain *why* identifying and evaluating the physical prior art systems was difficult to have done by the deadline despite diligent efforts to do

21
22
23
24
25
26
27
28

---

[1] Indeed, the Patent Office made a ruling against Fusion that directly undercuts its argument as to diligence with respect to the Mazur reference. Shortly after Fusion lost the IPR with respect to claim 11 of the '166 Patent, it filed a request with the Patent Office for an *ex parte* reexamination of claim 11 based on the Mazur reference. *See* ECF 116-1. Fusion argued to the Patent Office, just as it does to this Court now, that Fusion found the Mazur reference during the IPR only after it had already filed its Petition for the IPR, and that this timing was not too late. *See* Ex. A, p. 3. The Patent Office found that Fusion was estopped from requesting a reexamination based on Mazur because a skilled searcher conducting a diligent search of a U.S. patent database would be expected to uncover the Mazur reference sooner. *See id.* at 5-6, 7. If a diligent search by Fusion before it filed its IPR Petition would have uncovered the Mazur reference, it follows that the same conducted before February 17, 2023 would also have uncovered it.

so and instead the motion fatally focused on "*when* [the party seeking to amend] discovered [the] information, [] rather [than] whether [it] *could have* discovered it earlier had it acted with the requisite diligence." *Id*. at *12. Fusion's Motion here suffers from the same flaw, and should be denied for at least the same reason.

In short, Fusion has not shown that it was diligent in finding the prior art it seeks to inject into the case at this late date, or that it was diligent in serving the Oct. 2023 and May 2025 Supplements. It is Fusion's burden to show diligence, not XM's burden to show lack of diligence. The Motion should be denied.

### 2. Although it is not XM's Burden to Show Fusion's Lack of Diligence, Fusion Has Displayed a Lack of Diligence at Every Stage of the Case

"[T]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 14279, at *5. Although XM does not bear any burden to show a lack of diligence, XM nonetheless submits that Fusion has, in fact, displayed an utter lack of diligence. This case was *filed over three years ago* and the deadline for Fusion to serve its Invalidity Contentions was *almost two-and-a-half years ago*.

This Court has previously found a lack of diligence where a motion to amend infringement contentions to add accused products to the case based on the Court's claim construction ruling came four months after the Court had issued its claim construction order. *See Lighting Defense Grp. LLC, Shanghai Sansi Elec. Eng'g Co. Ltd.*, No. 22-cv-01476, ECF 147, at *2 (D. Ariz. Dec. 2, 2024). Other courts have reached the same result on motions to amend contentions in patent cases where the delay was even shorter. *See, e.g.*, *O2 Micro*, 467 F.3d at 1367 (affirming district court's finding of a lack of diligence where movant "waited almost three months . . . to serve its proposed amended contentions and two more weeks to formally move to amend"); *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-cv-00865, 2014 U.S. Dist. LEXIS 25406, at *10 (N.D. Cal. Feb. 26, 2014) (amended contentions not permitted when served 2.5 months after claim construction order and motion filed almost 3 months after claim construction order); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 U.S. Dist.

1   LEXIS 83115, at *16, 19 (N.D. Cal. Mar. 27, 2012) (amendment denied when movant waited

2   2.5 months after having "good cause" to amend contentions before actually doing so); *Oracle*

3   *Am., Inc. v. Google Inc.*, No. 10-cv-03561, 2011 U.S. Dist. LEXIS 87251, at *8-9, 13 (N.D. Cal.

4   Aug. 8, 2011) (amended contentions not permitted when served a month after claim construction

5   order and motion for leave was filed 2 months after claim construction order, where movant

6   waited another 2.5 weeks after permission to file a motion was granted to file its motion).

7         At every relevant point in time, Fusion has not been diligent:

8         *a.    Before Fusion served its Original Invalidity Contentions.*  On November 23,

9   2021, XM, through its counsel, sent a letter to Fusion explaining that Fusion's IntraLock system

10  (the product that XM contends infringes the '166 patent in this case) infringes at least claim 56

11  of XM's '589 Patent (a patent related to the '166 Patent).  *Compare* ECF 1-2, p. 3 of 82 ('166

12  Patent identifying '589 Patent as related patent) *with id.* at 38 of 82 (identifying '589 Patent).

13  This was one of the earliest events that may have motivated Fusion to conduct a diligent search

14  for prior art that it may ultimately have identified in its Invalidity Contentions in Feb. 2023.

15  Even if XM's pre-suit letter had not motivated Fusion to conduct a diligent search for prior art,

16  XM's filing of its complaint in this case on April 28, 2022 certainly should have.

17        In December 2022, *the parties agreed* on the February 17, 2023 deadline for Fusion to

18  disclose its Invalidity Contentions.  *See* ECF 44, p. 9; *see also* ECF 49.  Fusion had nine-and-a-

19  half months after the filing of the complaint (and fifteen months after the date of XM's pre-suit

20  letter) to search for prior art and include *all* prior art it wanted to rely on in this case in its

21  February 17, 2023 Invalidity Contentions.  There is no reason whatsoever that Fusion could not

22  have found Mazur and the Physical Prior Art Systems it highlights in its Motion, or any of the

23  additional prior art it seems to want to add now by then.  Fusion does not assert otherwise.

24        *b.    Before Fusion served its Oct. 2023 Supplement.*  On October 30, 2023, Fusion

25  served its First Supplemental Invalidity Contentions on XM (without seeking leave), adding

26  various new invalidity theories, though not the four "new" prior art references it seeks to add to

27  the case via its May 2025 Supplement.  Again, there is no reason whatsoever Fusion could not

28

have found Mazur and the Physical Prior Art Systems at least by then, albeit still nine months too late.  Fusion does not assert otherwise.

   **c.**  ***After the Court lifted the stay.***  The Court lifted the stay in this case on March 18, 2025, but Fusion did not serve its May 2025 Supplement until two months later on May 19, 2025.  This was despite the fact that, for example, by the time the Court lifted the stay, Fusion had already known about Mazur for more than seven months.  *See* Ex. A, p. 2 (Patent Office noting that Fusion had asserted the Mazur reference in the IPR as early as August 7, 2024).  As for the Physical Prior Art Systems, Fusion does not state when it discovered them.  But given that the IPR concluded 3.5 months before the Court lifted the stay, there is no reason Fusion could not have found them early enough to disclose them to XM immediately when the stay was lifted.  *See, e.g.*, *O2 Micro*, 467 F.3d at 1367; *Verinata*, 2014 U.S. Dist. LEXIS 25406, at *10; *Apple*, 2012 U.S. Dist. LEXIS 83115, at *16, 19; *Oracle*, 2011 U.S. Dist. LEXIS 87251, at *8-9, 13.

   **d.**  ***After Fusion served its May 2023 Supplement.***  Fusion served its Second Supplemental Invalidity Contentions on May 19, 2025, again, without seeking leave from this Court to amend its original Invalidity Contentions.  *See* ECF 124-1.  Only four days later, XM informed Fusion of its position that its Second Supplemental Invalidity Contentions were untimely.  *See* Ex. E.  Still, instead of immediately seeking leave to supplement its Invalidity Contentions, Fusion forced XM to raise the untimeliness issue with the Court.  Even after the Court ordered Fusion to seek leave if it wanted to rely on new art, however, Fusion waited 18 days to file the Motion, finally filing it on June 30, 2025, three-and-a-half months after the stay was lifted.  *See, e.g.*, *Oracle*, 2011 U.S. Dist. LEXIS 87251, at *8-9.

   Moreover, the supplementation was defective.  On May 23, 2025, at the same time that XM informed Fusion of its position regarding the untimeliness of the supplemental contentions, it also notified Fusion of its failure to produce the underlying evidence cited in the May 2025 Supplement, regarding the Physical Prior Art Systems.  *See* Ex. E.  Yet it was not until June 12, 2025 (after XM was in the process of raising the issue with the Court) that Fusion finished

producing them.  *See* Ex. F; Ex. G; Ex. H.  This also demonstrates a lack of diligence.

Accordingly, the Motion should be denied due to Fusion's lack of diligence.

### 3.    XM Will Suffer Prejudice if an Extension Is Granted

Although the focus of the "good cause" inquiry is the diligence of the party seeking the amendment to the schedule, prejudice to the party opposing the modification might supply additional reasons to deny a motion.  *See, e.g.*, *Johnson*, 975 F.2d at 609.  XM will suffer prejudice here.

XM had every right to expect that, after the conclusion of the IPR (if any claims of the '166 Patent survived – which they did), any invalidity arguments here at the district court would be significantly limited in two ways: first, to the art that was timely put forth by Fusion in its Feb. 2023 Invalidity Contentions, and second, by the exclusion of any art that was timely put forth in the Feb. 2023 original Invalidity Contentions that was or could have been used in the IPR.  If Fusion's Oct. 2023 and May 2025 Supplements are permitted by the Court, the scope of the invalidity issues in this case will be greatly expanded by all of that additional art.  In the limited time that the parties have to complete discovery, XM (with its technical expert) will be forced to expend significant time, money, and effort to address entirely new invalidity theories and prior art.  Not only will Fusion's new invalidity theories have to be addressed by XM's expert, but also XM may be forced to participate in third-party discovery because Fusion has served third-party subpoenas under Rule 45 to obtain documents and deposition testimony from the three third-party entities who were responsible for the manufacture and/or sale of the three physical prior art systems at issue here.[2]

If the Motion is granted, XM will continue to suffer prejudice to an even greater degree because Fusion's eleventh-hour disclosure of entirely new invalidity theories severely hampers XM's ability to substantively address those theories.  *The parties agreed* to the early disclosure of infringement and invalidity contentions here.  *See* ECF 44, p. 9.

---

[2] These three third-party depositions have not yet been scheduled.  To the extent they have not already taken place before the Court rules on this Motion, the Court may be able to prevent the prejudice of XM having to participate in those depositions.

The Court held a *Markman* Hearing on June 22, 2023 and issued its *Markman* Order on July 7, 2023.  *See* ECF 73.  XM would be severely prejudiced if Fusion is permitted to advance new invalidity theories now when, as just one example, XM has no opportunity to advance claim construction positions to address these theories.  The situation Fusion has created here is exactly the type of situation the Northern District of California sought to prevent in promulgating its Patent Local Rules, *Hewlett Packard*, 2016 U.S. Dist. LEXIS 20591, at *3, and the type of situation XM sought to prevent in agreeing with Fusion to the early disclosure of infringement and invalidity theories.

Accordingly, although not necessary to deny the Motion, prejudice to XM also supports not finding good cause here.

### 4.    Fusion's Argument Concerning Prejudice to Itself is Unavailing

Fusion argues that it would be extremely prejudiced if it were not allowed to supplement its Invalidity Contentions, again citing the limited scope of, and estoppel due to, the IPR.  *See* Mot., pp. 5-6.  Its argument fails for at least three reasons.

***First***, prejudice to the movant is not a factor that courts consider in determining whether good cause to support a change in the case schedule exists.  For this reason, the Court should disregard Fusion's arguments regarding any prejudice to itself.  Fusion cites one case for the proposition that "[o]ther district courts have found good cause for a defendant to amend its invalidity contentions after an IPR where the plaintiff would not be prejudiced."  Mot., p. 6 (citing *Dig. Ally, Inc. v. Taser Int'l, Inc.*, 2018 U.S. Dist. LEXIS 34274, at *7-10 (D. Kan. Mar. 2, 2018).  *Dig. Ally* is inapposite for at least two reasons: (1) here, the plaintiff XM will be prejudiced, as discussed above, *see supra* Section IV.A.3.; and (2) unlike here, defendant in that case had submitted detailed, credible evidence of prior art search efforts undertaken *prior* to the original Invalidity Contentions deadline, including that "five professional search firms and consultants" "spent more than 210 hours searching for and analyzing prior art," *see Dig. Ally.*, 2018 U.S. Dist. LEXIS 34274, at *9-10.

***Second***, Fusion's argument regarding prejudice to itself is logically flawed for the same

reasons as discussed above regarding the irrelevance of the IPR to whether Fusion was diligent. *See supra* Section IV.A.1.  Importantly, Fusion's argument that supplementation of its Invalidity Contentions became necessary only after XM raised the issue of estoppel is incorrect, and as a party represented by experienced patent counsel, disingenuous.

*Third*, to the extent Fusion would suffer any prejudice at all, it brought the prejudice upon itself.  Had Fusion simply done was it was supposed to do and identified by the February 17, 2023 Invalidity Contentions deadline *all* prior art it wanted to rely on in this case, it would not be in the position it finds itself in now.

Accordingly, the Motion cannot be granted based on any prejudice to Fusion.

**B.     Fusion Has Not Shown and Cannot Show "Excusable Neglect"**

Even if the Court finds that Fusion has shown good cause of the schedule change it seeks because it was diligent, Fusion must also show that its neglect in meeting the original deadline was "excusable neglect."  A court analyzes four factors to determine whether neglect is excusable: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the proceedings; (iii) the reason for the delay; and (iv) whether the movant acted in good faith.  *Brightly*, 2023 U.S. Dist. LEXIS 16198, at *3.  Fusion summarily states that it demonstrates excusable neglect through its Motion.  *See* Mot., p. 5.  But because Fusion does not analyze the four factors, it has failed to meet its burden to establish excusable neglect.  This deficiency alone constitutes sufficient grounds to deny the Motion; it is not XM's burden to illustrate excusable neglect in order for the Motion to be denied.  In any event, even if it tried, Fusion cannot show "excusable neglect":

**1.     The Danger of Prejudice to the Opposing Party**

XM has already suffered prejudice and will continue to suffer significant prejudice if the Motion is granted.  *See supra* Section IV.A.3.

Accordingly, this factor weighs against granting the Motion.

### 2.    The Length of the Delay and Its Potential Impact on the Proceedings

Fusion's motion for an extension of the invalidity contention deadline comes *more than 28 months* after the February 17, 2023 Invalidity Contentions deadline passed.  Courts systematically deny extensions like the one requested here after only a few months of delay by the movant in making the request.  *See, e.g.*, *O2 Micro*, 467 F.3d at 1367; *Verinata*, 2014 U.S. Dist. LEXIS 25406, at *10; *Apple*, 2012 U.S. Dist. LEXIS 83115, at *16, 19; *Oracle*, 2011 U.S. Dist. LEXIS 87251, at *8-9, 13.

As discussed above, *see supra* Section IV.A.3., if the Motion is granted, the invalidity arguments that can be raised in this proceeding will be greatly expanded, putting more work on XM, but also the Court.  Fusion's new invalidity theories will have to be addressed by XM's expert, and XM may be forced to participate in third-party discovery because Fusion has served third-party subpoenas under Rule 45 to obtain documents and deposition testimony from the three third-party entities who were responsible for the manufacture and/or sale of the three physical prior art systems Fusion is most concerned about adding into the case.  Fact and expert discovery is set to close on Aug. 29, 2025, but it will be almost impossible for XM to address the new art by then, potentially requiring XM to ask for the schedule to be extended again, thereby striating the time to the ultimate resolution of the case.

As also discussed above, *see supra* Section IV.A.3., if the Motion is granted and Fusion's new invalidity theories are permitted, XM will be significantly prejudiced because it no longer has the opportunity to advance claim construction positions to address these theories, since this Court has already issued its *Markman* Order.  *See* ECF 73.  Courts have found these very circumstances to weigh against granting a motion for an extension in several other cases.  *See, e.g.*, *Tech Pharm. Servs. v. Alixa Rx LLC*, No. 15-cv-766, 2017 U.S. Dist. LEXIS 164789, at *8-9 (E.D. Tex. Jan. 18, 2017); *Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538, 541-42 (E.D. Tex. 2015).  In *Tech Pharm.*, the court explained:

> During the interval [between the service of the original Invalidity Contentions and the service of the Proposed Amended Invalidity Contentions], Plaintiff was required to: propose terms for construction; file amended pleadings if appropriate; exchange proposed claim constructions and extrinsic evidence; complete discovery on claim

construction; file the opening claim construction brief; file a reply claim construction brief, and file joint claim construction and chart.

*Tech Pharm.*, 2017 U.S. Dist. LEXIS 164789, at *9. Further, the delay in *Allure* was only three months and in *Tech Pharm.* only four-and-a-half, in stark contrast to the 28-month delay here.

Accordingly, this factor weighs against granting the Motion.

### 3.    The Reason for the Delay

Fusion cannot demonstrate any good reason for its delay. Its lack of diligence can be explained by two faulty beliefs it held, but its reasons do not amount to excusable neglect:

Although Fusion *agreed* to the February 17, 2023 Invalidity Contentions deadline, it believed that Rule 26 permitted it to supplement its Invalidity Contentions by right. *See* Ex. B (Fusion stating that "even if there were [specific patent local rules in this district that require[d] a specific deadline for disclosure of the contentions], the parties would be able to, and be required to, supplement those disclosures . . . under Rule 26."). Guided by this belief, Fusion assumed wrongly that it had no reason to take the Feb. 17, 2023 deadline seriously. Fusion also "fully expected that claim 11 [of the '166 Patent] would be found invalid . . . [in the IPR]." Mot., p. 6. Guided by this belief, Fusion contends that it had no reason to expend additional efforts to search for physical prior art systems prior to the February 17, 2023 Invalidity Contentions deadline, even though it is not disputed that such references should have been included in that submission. Fusion decided to simply take a "wait-and-see" approach to the IPR, and it believed it could simply supplement its Invalidity Contentions at a later date, under Rule 26.

Fusion was mistaken about the application of Rule 26 to the supplementation of Invalidity Contentions because Rule 26(e)(1)'s supplementation requirements apply only to certain categories of documents specified by Rule 26(a), which do not include Invalidity Contentions. *See, e.g.*, *Taction Tech., Inc. v. Apple Inc.*, No. 21-cv-812, 2023 U.S. Dist. LEXIS 67132, at *19 (S.D. Cal. Apr. 17, 2023). Fusion is represented by patent counsel who could have and should have informed Fusion about this.

Accordingly, this factor weighs against granting the Motion.

### 4.    Whether the Movant Acted in Good Faith

Fusion has not specifically argued that it acted in good faith, despite having the burden to show that its neglect was excusable.  Accordingly, this factor is neutral, at best.

### C.    Fusion's Motion Cannot Be Granted in Full Because Fusion Has Not Shown Good Cause or Excusable Neglect for Each Amendment

Finally, as a matter of procedure, the scope of Fusion's argument in the Motion is limited to four prior art items: three physical prior art systems and the Mazur reference.  *See generally* Mot.  But Fusion's Second Supplemental Invalidity Contentions contains amendments beyond those four items, and Fusion seemingly requests a blanket extension of the Invalidity Contentions deadline from February 17, 2023 to May 19, 2025 to encompass everything in its Oct. 2023 Supplement and May 2025 Supplement.  Putting aside the four references that are really the catalyst for Fusion's Motion, Fusion's May 2025 Supplement also contain new theories based on at least: (1) new prior art references, including Simon Provisional; Leu; LCP; and Synthes Chart and (2) 35 U.S.C. § 112.  *Compare* Ex. C, pp. 2-3, 26-28 *with* Ex. D., pp. 2-3, 29-31.  Because Fusion was never granted leave to add these new theories, and has not addressed these amendments in the Motion, the Motion cannot be granted in full.

Accordingly, if the Motion is granted, it should be granted with respect to only the four prior art items that Fusion actually put at issue in the Motion.

## V.    CONCLUSION

For the foregoing reasons, XM respectfully requests that the Court deny the Motion in its entirety.

Date: July 14, 2025

By: */s/ Michael J. Zinna*

**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (admitted *pro hac vice*)
mzinna@kelleydrye.com
Abhishek Bapna (admitted *pro hac vice*)
abapna@kelleydrye.com
One Jefferson Road
Parsippany, NJ 07054
Telephone: (973) 503-5964

**FENNEMORE CRAIG, P.C.**
William G. Klain
Zachary W. Rosenberg
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
(602) 916-5000
wklain@fennemorelaw.com
zrosenberg@fennemorelaw.com

*Attorneys for Plaintiff Extremity Medical, LLC*

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on this day a true and correct copy of the foregoing document was

3

served on counsel via filing through the ECF system.

4

5

Dated: July 14, 2025

6

                                    */s/ Michael J. Zinna*

7

                                    **KELLEY DRYE & WARREN LLP**
                                    Michael J. Zinna (admitted *pro hac vice*)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28