Samuel Rocereta (Bar No. 035983)
ROCERETA LAW, LLC
PO Box 826
Queen Creek, AZ 85142
Phone: (602) 757-3360
sam@fusionorthopedics.com

Corby R. Vowell (*pro hac vice*)
VOWELL LAW, PLLC
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Phone: (817) 313-9548
corby@vowelllawfirm.com

Ross G. Culpepper (*pro hac vice*)
ALLIANCE IP, LLC
7211 La Vista Dr.
Dallas, TX 75214
Phone: (469) 917-7693
ross@allianceip.com

*Attorneys for Defendant/Counter-Plaintiff*
*Fusion Orthopedics, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Extremity Medical, LLC,<br><br>    Plaintiff<br><br>v.<br><br>Fusion Orthopedics, LLC,<br><br>    Defendant | No. 2:22-CV-00723-PHX-GMS<br><br>**DEFENDANT FUSION ORTHOPEDICS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR EXTENSION OF THE DEADLINE FOR INVALIDITY CONTENTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

   Defendant, Fusion Orthopedics, LLC ("Fusion"), through undersigned counsel, hereby files this Reply in Support of its Motion for Extension of the Deadline for Invalidity Contentions. There was a stay of this litigation based on the results of the Inter Partes

1

Review ("IPR") procedure U.S. Patent Trial and Appeal Board ("PTAB") that precipitated that stay. In its Motion Fusion demonstrated good cause for extending the deadline for supplementing its Invalidity Contentions to allow Fusion to assert prior art that could not have been brought in the IPR proceedings. Further, Fusion would be severely prejudiced if it is not allowed to supplement its Invalidity Contentions based on the results of the IPR and subsequent Final Written Decision. Conversely, Extremity Medical, LLC ("Extremity") will not be prejudiced because both it and its expert have ample time to review and address the new prior art systems of which they were aware of at least two months ago. Finally, Fusion also satisfied the factors for showing excusable neglect with respect to the reason for the delay in serving Supplemental Invalidity Contentions, the prejudice to Fusion if the Motion is granted, and the lack of prejudice to Extremity if the Motion is granted.

I.   **INTRODUCTION**

The Court is aware that the IPR was instituted on November 27, 2023, and the Court subsequently stayed the case in December of 2023 pending the resolution of the IPR (Dkt. 107). The Final Written Decision in IPR2023-00894 was issued by the PTAB on November 4, 2024, in which that claims 1-10 and 12-15 of the '166 Patent are unpatentable. Only dependent claim 11 was not held invalid based on a technicality. Extremity did not appeal the Final Written Decision ("FWD") such that it is now the law of the case, and Extremity can no long assert claims 1-9 or 12-15 of the '166 Patent.

Because claim 11 was never examined in the IPR based on a procedural technicality both Fusion and Extremity are aware that claim 11 is invalid over the same prior art asserted in the IPR as well as additional prior art systems that Fusion was able to identify in response to the FWD by the PTAB. Fusion will be prejudiced if it is not allowed to supplement its Invalidity Contentions with evidence of prior art systems that were on sale or offered for sale before the effective filing date but could not have been to the PTAB in an IPR proceeding. Fusion has diligently searched for and found additional prior art confirming that claim 11 is invalid for the same reasons that the PTAB found dependent claim 10 invalid.

## III. ARGUMENT

### A. Fusion has been Diligent in Supplementing its Invalidity Contentions

As soon as Fusion realized that the PTAB was not going to invalidate the remaining claim 11 as it should have, but only based on a technicality, Fusion searched diligently for additional prior art systems that could <u>not</u> have been asserted in the IPR to conclusively establish that claim 11 of the '166 Patent is equally as invalid and unenforceable by Extremity in this litigation. The IPR proceedings dramatically changed the validity issues in this case by the PTAB confirming that all but one claim of the '166 Patent is invalid. Both Extremity and Fusion know that claim 11 is also invalid over prior art cited in the IPR, but Extremity has made some arguments that Fusion may be estopped from asserting that same prior art to demonstrate clearly why claim 11 cannot be pursued by Extremity.

The recent *Ingenico v. Ioengine, LLC* case from the Federal Circuit reiterated that prior art systems themselves cannot be asserted as grounds for invalidity during an IPR proceeding. *See Ingenico, Inc. v. Ioengine, LLC,* 136 F.4th 1354, 1367 (Fed. Cir. 2025). *Ingenico* made it very clear that IPR estoppel does not apply to a physical prior art system as previously stated in the AIA Statute. These prior art <u>systems</u> can only be asserted in the district court or subsequent appeals and not at the PTAB to show that the invention was publicly known, publicly used, or on sale prior to the critical date of the invention. *Id.*

At least one other district court has followed the holding in *Ingenico* and even granted the defendant the ability to supplement its invalidity contentions and expert reports based on prior art systems that could not have been asserted in an IPR. *See Contour IP Holding, LLC v. GoPro, Inc.*, 2025 U.S. Dist. LEXIS 132840, at *15-19 (N.D. Cal. July 11, 2025). There, the defendant asserted three new. *Id.,* at * 17-19.

### B. Fusion Would Be Severely Prejudiced If Motion is Denied

Fusion would be severely prejudiced if not allowed to amend its contentions with the newly discovered prior art that could not have submitted in the IPR. Specifically, there were three new prior art systems that Fusion found showing conclusively that claim 11 was not invalid over art that the PTAB could not consider. Further, Fusion asserted one additional

3

prior art reference, Mazur, that was located and identified during the IPR and which Fusion was not aware despite having done a diligent prior art search early in this case. It was not until after Extremity attempted to modify the scope of its claims during the IPR that Fusion's search firm was able to identify the Mazur reference. Because of the procedural technicality during the IPR, the PTAB declined to review the Mazur reference in its later FWD.

Fusion and its expert should be able to rely on the FWD of the PTAB and that only claim 11 remains as part of its Supplemental Invalidity Contentions. This FWD was not used until November 2024 after the case had been stayed for a year. Fusion could not have even supplemented its Invalidity Contentions with the PTAB's findings that all of the other claims were invalid by the original deadline. The fact that Extremity chose not to appeal the FWD to the Federal Circuit shows that Extremity acquiesces and agrees that all of the other claims in the '166 Patent are invalid. This confirms that Fusion and its expert were correct in their determination that the other claims are clearly invalid. Here, the sole remaining claim merely adds the same limitation of a "self-tapping" edge" to claim 11 that was in claim 10 and which was already found to be in the prior art by the PTAB and not appealed by Extremity. Fusion would be prejudiced if not able to use the facts along with the additional prior art necessary to establish that claim 11 is also invalid. Extremity has raised the potential issue of IPR estoppel to avoid the inevitable conclusion that claim 11 is invalid.

The potential for extreme prejudice to Fusion if it is not allowed to supplement its invalidity contentions is reason enough to grant the Motion, especially in light of the PTAB's FWD, Extremity's acquiescence in the same, and the diligence Fusion had in finding additional prior art based on the proceedings in the IPR.

C. **Extremity Medical Will Not Be Prejudiced**

Extremity first argues that it would be prejudiced because its experts would not have enough time to address the additional prior art asserted in the Supplemental Invalidity Contentions due to the discovery deadline that is now set for August 29, 2005. However, this deadline is more than 5 weeks away allowing ample time for the experts to opine on this new prior art. Further, Extremity and its experts have had this prior art and the claim

4

charts attached to its Supplemental Contentions since May 19, 2025 when they were served by Fusion. Extremity and its experts have had more than adequate time to address the prior art. The fact that Fusion served its Contentions and filed a Motion for Leave to extend the deadline put Extremity on notice that it would likely need to address this prior art.

Extremity further contends that it would be prejudiced if the supplementation is allowed because it would not be able to assert additional claim construction positions related to or that arise from the additional prior art. However, that is simply not the case and not consistent with Federal Circuit precedence. In the *O2 Micro* case, the Federal Circuit O2 Micro – court can resolve additional claim construction issues that arise even up to the time of trial O2 Micro Consequently, any new or additional disputes regarding claim construction would appropriately be resolved by the Court in advance of trial.

The Federal Circuit has also affirmed a district court's construction of another claim term where there <u>continued</u> to be a dispute as to meaning of that other construction. For instance, in *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378 (Fed. Cir. 2009), the Federal Circuit affirmed the district court's construction of the term "sales price" that was part of the construction for the term "excess cash." *Id.* at 1381-84; *see also Id.,* at 1383 ("In the light of this acknowledged disagreement over the meaning of 'sales price,' the fact that EPC [the patentee] would both propose to define its patent claims in terms of this phrase and then fault the court for attempting to clarify the phrase's meaning is at best ironic and at worst disingenuous.").

Even a mid-trial construction of a claim term can be acceptable where a dispute as to scope arises. In *Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010), the district court further defined the term "score line," which was previously construed by the magistrate, as it became apparent there was still a dispute remaining as to the scope of the term. *Id.* at 1315-16. The Federal Circuit acknowledged that "[w]hile recognizing the potential for surprise and prejudice in a late adjustment to the meaning of claim terms, this court also acknowledges that the trial court is in the best position to prevent gamesmanship and unfair advantage during trial." *Id.* at 1315.

1  Consequently, Extremity will not be prejudiced based on further claim construction by the
2  Court or clarifications to its existing claim construction order.
3        Lastly, Extremity Medical cannot proceed forward on claims 1-9 and 12-15 as it
4  originally asserted in this litigation. Given that it acquiesced with the PTAB's findings by
5  not appealing the FWD, Extremity has no choice but to supplement its infringement
6  contentions or otherwise dismiss the other invalid claims it knowingly asserted in this
7  litigation. Both parties must supplement their contentions, and the parties have agreed to
8  provide supplemental expert reports addressing the remaining issues and claims.

9        **D.**    **Fusion has Shown Excusable Neglect for Granting Motion**

10        Fusion has met its burden not only to show "good cause" for granting the Motion but
11  also excusable neglect which applies when "[a]n extension of a deadline sought after its
12  expiration" *Brightly v. Corizon Health Inc.*, 2023 U.S. Dist. LEXIS 16198, at *3 (D. Ariz.
13  Jan. 31, 2023) (citations omitted); Fed. R. Civ. P. 6(b)(1)(B) ("[w]hen an act may or must
14  be done within a specified time, the court may, for good cause, extend the time . . . on motion
15  made after the time has expired if the party failed to act because of excusable neglect.").
16  The district courts analyze "[f]our factors [to] determine whether neglect is excusable: (i)
17  the danger of prejudice to the opposing party; (ii) the length of the delay and its potential
18  impact on the proceedings; (iii) the reason for the delay; and (iv) whether the movant acted in good
19  faith." *Id.* (citing *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir.
20  2000)).
21        In both its original Motion and this Reply, Fusion has demonstrated why Extremity
22  will suffer no prejudice if Fusion is allowed to supplement with the additional prior art
23  references. Extremity and its expert have more than enough time to address these prior art
24  references. Further, any additional claim construction issues that arise due to the IPR
25  proceedings or the additional prior art will be handled by the Court in accordance with the
26  *O2 Micro* case and subsequent cases thereto.
27        The length of the delay also weighs in favor of granting the Motion because the case
28  was stayed for a year during which time the PTAB substantially narrowed the issues in the

case leaving only one dependent claim left that likely will be held invalid through a summary judgment motion before this case ever goes to trial. The delay will not have any impact on the proceedings because it was due to the case being stayed. The parties also have a new schedule in which additional discovery and supplemental expert reports are to be provided and will minimize any potential impact on the proceedings in this case.

Further, Fusion's reason for the delay in moving to amend its contentions is based on the stay of the litigation, the proceedings in the IPR, and the FWD which dramatically affected the scope of the issues in the case. Fusion is only attempting to supplement with prior art systems that could not have been asserted in the IPR and which Fusion did not anticipate being necessary because all elements of all claims are found in the prior art that Fusion asserted previously.

Finally, Fusion has acted in good faith in attempting to supplement its Contentions in a diligent fashion after receiving the FWD of the IPR. Its supplement is not overreaching nor does it relate to prior art that was discovered before the IPR. For these reasons, Fusion respectfully requests that the Court find that there was excusable neglect in addition to good cause such that the Motion should be granted.

IV.    **CONCLUSION**

Based on the foregoing, Fusion requests that the Court grant its Motion and allow Fusion supplement its Invalidity Contentions. Fusion has demonstrated good cause for extending the deadline based on the outcome of the IPR and the Court's stay of the litigation once the IPR was initiated. Fusion has also shown that it will be extremely prejudiced if it is not allowed to assert the additional prior art it found during the IPR and after the FWD. Extremity Medical, on the other hand, has not established any real prejudice that it would suffer if the Motion is granted. Therefore, Fusion requests that the Court grant Fusion's Motion, extending the deadline for its Invalidity Contentions to May 19, 2025, the date on which Fusion previously served its supplemental contentions.

DATED: July 21, 2025

By: *Corby R. Vowell*
Corby R. Vowell (*pro hac vice*)
VOWELL LAW, PLLC
8350 N. Central Expressway, Suite 1900
Dallas, TX 75206
Phone: (817) 313-9548


Samuel Rocereta (Bar No. 035983)
ROCERETA LAW GROUP, LLC
PO Box 826
Queen Creek, AZ 85142
Phone: (602) 757-3360

Ross G. Culpepper (*pro hac vice*)
ALLIANCE IP, LLC
7211 La Vista Dr.
Dallas, TX 75214
Phone: (469) 917-7693
ross@allianceip.com


*Attorneys for Defendant*
*Fusion Orthopedics, LLC*


By: /s/*Corby R. Vowell*
Corby R. Vowell


**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, a true and correct copy of the above and foregoing document has been served on counsel of record for Plaintiff via electronic mail at the e-mail address(es) set forth below:

MZinna@KelleyDrye.com

vferraro@KelleyDrye.com

ABapna@KelleyDrye.com

wklain@fennemorelaw.com

8

By: /s/*Corby R. Vowell*
Corby R. Vowell