**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Extremity Medical, LLC, | No. CV-22-00723-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Fusion Orthopedics, LLC, | |
| Defendant. | |
| Fusion Orthopedics, LLC, | |
| Counter-Claimant, | |
| v. | |
| Extremity Medical, LLC, | |
| Counter-Defendant. | |

Pending before the Court are Defendant Fusion Orthopedics, LLC's ("Fusion") Motion for Extension of the Deadline for Invalidity Contentions (Doc. 124) and Amended Motion for Summary Judgment of Invalidity (Doc. 148), and Plaintiff Extremity Medical, LLC's ("Extremity") Motion for Partial Summary Judgment (Doc. 133). For the reasons discussed below, Fusion's Motion for Extension of the Deadline for Invalidity Contentions (Doc. 124) is denied. Fusion's Motion for Summary Judgment of Invalidity (Doc. 148) is also denied. Finally, Extremity's Motion for Partial Summary Judgment (Doc. 133) is granted in part and denied in part.[1]

---

[1] The parties' requests for oral argument are denied because they have had an adequate

## BACKGROUND

### I.      The '166 Patent

On April 12, 2022, the United States Patent Office ("USPTO") issued U.S. Patent No. 11,298,166 (the "'166 Patent") to Extremity for an "Intraosseous Intramedullary Fixation Assembly and Method of Use." (Doc. 1 at 2-4; Doc. 148-2). "The '166 Patent claims priority" to other patents held by Extremity, giving the '166 Patent an effective filing date—also known as a priority date—of February 11, 2010. (Doc. 1 at 4; Doc. 148-2 at 2-3; *see* Doc. 150 at 15). The Patent is for a medical device: a mechanical bone fusion assembly used for treating damaged or fractured bones in patients' extremities. (Doc. 1 at 3; Doc. 139 at 2; Doc. 148 at 2). Extremity uses the '166 Patent and related patents in its "IOFiX Plus and IOFiX 2.0 products." (Doc. 1 at 3-5).

The device has three components—referred to as "members." (Doc. 139 at 2). The figure below shows an assembly of the device:



(Doc. 148-2 at 24 (cleaned up, color added)). The "third member" (orange) is an "elongated body" containing two tapered bores through which the "first member" (blue) and the "second member" (green) pass on their way into the bone, before locking in place within the bores. (*Id.* at 24, 32-33). For the purposes of identifying these members

---

opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

throughout this Order, the orange member will be referred to as the "Bone Anchor," the blue member as the "Proximal Screw," and the green member as the "Distal Screw."

The Proximal Screw and Distal Screw are "substantially similar," each having a bulbous end (which interlocks with the Bone Anchor's bores), a smooth cylindrical portion, and a threaded portion (which has a self-tapping leading edge). (*Id.* at 30, 32). The Bone Anchor itself has a smooth cylindrical portion (the "Bone Anchor Shaft") and a threaded portion. (*Id.* at 32-33). The Proximal Screw is inserted into the first end of the Bone Anchor Shaft, through a first aperture and a first tapered bore (the "Proximal Bore"), before emerging from a second aperture on Bone Anchor Shaft, opposite the first aperture. (*Id.* at 33). The Distal Screw is similarly inserted into a third aperture and a second bore (the "Distal Bore") before emerging from a fourth aperture on the opposite side of the Bone Anchor Shaft. (*Id.*). As they pass through the Bores, the Proximal Screw and the Distal Screw intersect the Bone Anchor's longitudinal axis (the "Bone Anchor Axis," orange arrows above) at acute angles. (*Id.* at 32-33). These angles are predetermined according to the device's intended use: the Proximal Screw travels along the axis of the Proximal Bore (the "Proximal Bore Axis," blue arrows above) and the Distal Screw travels along the axis of the Distal Bore (the "Distal Bore Axis," green arrows above). (*Id.*).

This assembly is described in Claim[2] 1 of the '166 Patent. (*Id.* at 32-33). Claim 1 recites a preamble and nine elements:

> An assembly for bone fusion, comprising:
>
> [1a] a [Proximal Screw] comprising a first elongated body extending from a first end to a second end along a [Proximal Bore Axis], wherein the [Proximal Screw] comprises a shaft portion having an external surface and a head portion having an exterior surface, said [Proximal Screw] further comprising a first thread having a first thread height extending radially outward from the external surface of said shaft portion;
>
> [1b] a [Distal Screw] comprising a second elongated body extending from a first end to a second end along a [Distal Bore Axis], wherein the [Distal Screw] comprises a shaft

---

[2] "The claims of a patent define the invention which the patentee is entitled to exclude." *Jazz Pharms., Inc. v. Avadel CNS Pharms.*, 60 F.4th 1373, 1379 (Fed. Cir. 2023) (citation modified).

having an external surface, said [Distal Screw] further comprising a first thread having a first thread height extending radially outward from the external surface of said shaft;

[1c] a [Bone Anchor] comprising a third elongated body extending along a straight line from a first end to a second end along [the Bone Anchor Axis], wherein the [Bone Anchor] comprises a first aperture at a terminal end of the first end of the [Bone Anchor], and a [Proximal Bore] extending along a [Proximal Bore Axis] from the first aperture to a second aperture on [the Bone Anchor Shaft], wherein the [Proximal Bore] comprises an interior surface at the first aperture, wherein there are no threads adjacent to the second aperture on the [Bone Anchor Shaft], and wherein the [Bone Anchor Axis] and the [Proximal Bore Axis] define a first angle,

[1d] wherein the [Bone Anchor] further comprises a third aperture on the [Bone Anchor Shaft], and a [Distal Bore] extending along a [Distal Bore Axis] from the third aperture to a fourth aperture on [the Bone Anchor Shaft], wherein the [Bone Anchor Axis] and the [Distal Bore's axis] define a second angle,

[1e] wherein the [Proximal Screw] couples to the [Bone Anchor] by inserting the first end of the [Proximal Screw] into the first aperture, through the [Proximal Bore], and out of the second aperture,

[1f] wherein the [Distal Screw] couples to the [Bone Anchor] by inserting the first end of the [Distal Screw] into the third aperture, through the [Distal Bore], and out of the fourth aperture,

[1g] wherein the first angle [between the Bone Anchor Axis and the Proximal Bore Axis] is in the range of about 0 degrees to about 90 degrees,

[1h] wherein the second angle [between the Bone Anchor Axis and the Distal Bore Axis] is in the range of about 0 degrees to about 90 degrees, and

[1i] wherein the [Distal Bore Axis] is substantially perpendicular to the [Bone Anchor Axis].

(*Id.*).

Claims 1 through 11 describe the assembly, while Claims 12 through 15 describe the associated method. (*Id.*). Claims 2 through 11 are dependent on Claim 1, while Claims 13, 14, and 15 are dependent on Claim 12. (*Id.*). For example, Claim 10 recites:

The assembly of [C]laim 1, wherein the first end of the [Proximal Screw] includes a self-tapping edge for removing

- 4 -

bone material.

(*Id.*).  Claim 11 then recites:

> The assembly of [C]laim 10, wherein the first end of the [Distal Screw] includes a self-tapping edge for removing bone material.

(*Id.*).    Because Claim 11 is dependent on Claim 10, which is dependent on Claim 1, Claim 11 includes all limitations of Claims 1 and 10.  35 U.S.C. § 112(d).

## II.    Procedural History

### A.    Civil Suit

On April 28, 2022, Extremity filed its Complaint against Fusion, alleging that Fusion's IntraLock System infringed the '166 Patent under 35 U.S.C. § 1 *et seq*.  (Doc. 1 at 1).    The IntraLock System—which will be discussed in detail, *infra* Discussion subsection II.C.1—is a bone fusion assembly similar to Extremity's IOFiX product.  (Doc. 1 at 5-7; Doc. 30 at 4).    On September 22, 2022, Fusion brought counterclaims for declaratory judgments of non-infringement and of invalidity of the '166 Patent.[3]  (Doc. 30 at 8-9).

After the parties made initial disclosures and filed a joint proposed schedule in December 2022, the Court entered a Case Management Order ("CMO") which set pre-trial deadlines for the parties.  (Docs. 44, 49).  As relevant here, the deadline for Fusion to disclose its Invalidity Contentions ("ICs") was February 17, 2023.  (Doc. 49 at 2).  Fusion disclosed its February 2023 ICs (Doc. 127-3) before filing a petition with USPTO for an *Inter Partes* Review ("IPR") of the '166 Patent.  (Doc. 140-3 at 6).  After the IPR was instituted on November 17, 2023, the Court granted a stay pending its resolution.  (Doc. 107).

### B.    *Inter Partes* Review

#### 1.    *Inter Partes* Review Generally

IPR allows USPTO "to reconsider and to cancel an issued patent claim in limited circumstances."  *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S.

---

[3] The parties each filed additional counterclaims (Docs. 30, 35) but stipulated to dismiss those claims.  (Docs. 51, 52).

325, 328-29 (2018). Under the Leahy-Smith America Invents Act ("AIA"), 35 U.S.C. § 100 *et seq.*, a person other than the patent's owner may petition USPTO to find that one or more claims of a patent are unpatentable. 35 U.S.C. § 311(a). A petition must "identif[y], in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." *Id.* § 312(a)(3). If USPTO determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least" one of the challenged claims, it institutes an IPR. *Id.* § 314(a).

Once instituted, the Patent Trial and Appeal Board ("PTAB") may review the patent's validity on only two statutory grounds under §§ 102 and 103, "and only on the basis of prior art consisting of patents or printed publications." *Id.* §§ 311(b), 316(c). While PTAB may consider patents or printed publications, it may not consider "prior art systems," which are another form of prior art that is not a patent or printed publication. *Id.* § 311(b).

Patents and printed publications support two statutory grounds for invalidity: anticipation, § 102, and obviousness, § 103. *Id.* Under the pre-AIA standards,[4] a patent is anticipated if the invention was "patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent" or "more than one year prior to the date of the application for the patent in the United States." *Id.* § 102(a)-(b) (pre-AIA). "Anticipation is a question of fact," and applies "only if each and every element [of the challenged claim] is found within a single prior art reference, arranged as claimed." *In re Smith Int'l*, 871 F.3d 1375, 1381 (Fed. Cir. 2017) (first citing *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 958 (Fed. Cir. 2016), and then quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015)). As for obviousness—a question of law based on factual determinations—a patent or patent claim is invalid "if the differences between the subject matter" of the invention and prior art (or

---

[4] Because the priority date of the '166 patent is February 11, 2010 (Doc. 148-2 at 2-3), the pre-AIA version of §§ 102 and 103 govern here. *Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1000 n.1 (Fed. Cir. 2014) ("AIA amendments apply only to applications and patents with an effective filing date of March 16, 2013, or later").

a combination of prior art ) "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art" (a "POSA").  35 U.S.C. § 103(a) (pre-AIA); *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 925 (Fed. Cir. 2024).  Statutory grounds for invalidity other than anticipation and obviousness—such as the public-use and on-sale bars which invalidate a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the" patent's critical date—are not available.  35 U.S.C. §§ 102(b) (pre-AIA), 311(b).

During IPR, the petitioner bears "the burden of proving a proposition of unpatentability by a preponderance of the evidence."  *Id.* § 316(e).  A patent owner may make one motion to amend—to cancel or "propose a reasonable number of substitute claims" to any challenged claim—so long as the amendment does "not enlarge the scope of the claims of the patent or introduce new matter."  *Id.* § 316(d).

If an IPR is instituted, and not otherwise dismissed, PTAB will "issue a final written decision" (an "FWD") concerning "the patentability of" the challenged or amended challenged claims.  *Id.* § 318(a).  Once the time for an appeal has expired, USPTO will "issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, [and] confirming any claim of the patent determined to be patentable."  *Id.* § 318(b).

### 2.    *Inter Partes* Review of the '166 Patent

On November 4, 2024, PTAB issued its FWD on the '166 Patent.  (Doc. 140-2 at 1-5).  In its petition, Fusion identified five prior art references: (1) French Patent Application Publication No. FR 2,861,576 A1, published May 6, 2005 ("Cognet"); (2) U.S. Patent No. 4,827,917, issued May 9, 1989 ("Brumfield"); (3) U.S. Patent Application Publication No. 2003/0187447 A1, published October 2, 2003 ("Ferrante"); (4) U.S. Patent Application Publication No. 2006/0206044 A1, published September 14, 2006 ("Simon"); and (5) U.S. Patent No. 6,270,499 B1, issued August 7, 2001 ("Leu").  (Doc. 140-3 at 11, 13-14, 37-38, 40-43, 63).  Fusion asserted seven grounds for invalidity based on these five references:

- 7 -

| Ground | Claim(s) Challenged | Statutory Grounds | Reference(s) |
|---|---|---|---|
| 1 | 1-7, 9, 12, 13 | Anticipation | Cognet |
| 2 | 4, 8, 10, 14, 15 | Obviousness | Cognet & Brumfield |
| 3 | 11 | Obviousness | Cognet & Ferrante |
| 4 | 1, 4, 5, 8, 10–12, 14, 15 | Anticipation | Simon |
| 5 | 4, 8, 10, 11, 14, 15 | Obviousness | Simon & Ferrante |
| 6 | 9 | Obviousness | Simon & Cognet |
| 7 | 2, 3, 6, 7, 13 | Obviousness | Simon & Leu |

(Doc. 140-2 at 6). After reviewing Grounds 1 and 2,[5] PTAB found that Claims 1-10 and 12-15 were unpatentable.[6] (*Id.* at 43).

As to Grounds 3, 4, and 5, PTAB found that Fusion had failed to "show by a preponderance of the evidence that [C]laim 11 is unpatentable." (Doc. 127-1 at 5 (USPTO discussing the FWD's findings)). Ground 3 failed because Fusion did not argue that Ground 3 invalidated Claims 1 and 10, and, thus, did not address any of the limitations that Claim 11 incorporates from Claims 1 and 10. (Doc. 140-2 at 41-43). This was "a fatal flaw." (*Id.* at 41). Ground 4 failed because Simon "disclose[d] the use of only headless screws," while Claim 1 (as incorporated by Claim 11) required "a screw having a head portion." (*Id.* at 44-45). Finally, Ground 5 failed because Fusion did not show that a POSA "would have been motivated to combine Simon with Ferrante" or would have had any "reasonable expectation of success" in doing so, as required to show that Ground 5 rendered Claim 11 obvious. (*Id.* at 45-47). Indeed, Fusion did not include any explanation or "additional detail" to support its conclusory arguments about what assumptions a POSA would make. (*Id.*).

When neither party appealed, PTAB issued "an Inter Partes Review Certificate . . . cancelling [C]laims 1-10 and 12-15 and finding [C]laim 11 patentable." (Doc. 127-1 at 5); 35 U.S.C. § 318(b).

---

[5] PTAB did not address Grounds 6 and 7 because those grounds were only raised as to claims invalidated by Grounds 1 and 2. (Doc. 140-2 at 47).
[6] PTAB also found Extremity's proposed substitute claims for Claims 1-10 and 12-15 to be unpatentable but did not review the proposed substitute claim for Claim 11 because Claim 11 was patentable. (Doc. 140-2 at 67).

### C.    *Ex Parte* Reexamination Request

#### 1.    *Ex Parte* Reexamination Generally

*Ex parte* reexamination proceedings are another means for USPTO to reconsider the validity of a granted patent. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 360 (2018). As relevant here, "[a]ny person at any time" may request reexamination of "any claim of a patent on the basis of" certain prior art, "consisting of patents or printed publications . . . ." 35 U.S.C. §§ 301, 302. "The request must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." *Id.* § 302. In considering the request, USPTO "determine[s] whether a substantial new question of patentability is raised." *Id.* § 303(a). If a substantial new question of patentability is raised, USPTO will institute the *ex parte* reexamination. *Id.* § 304. If not, USPTO's denial of the request is "final" and cannot be appealed. *Id.* § 303(c).

#### 2.    Fusion's *Ex Parte* Reexamination Request

On December 13, 2024, Fusion filed an *ex parte* reexamination request with USPTO regarding Claim 11, arguing that it was not distinct from Claim 10. (Doc. 116-1). On February 21, 2025, USPTO vacated Fusion's request, finding that the asserted grounds for reexamination "could have been raised in the prior IPR" and were therefore estopped under 35 U.S.C. § 315(e)(1). (Doc. 127-1 at 9-10; Doc. 118 at 3). Specifically, Fusion's request relied on a reference to U.S. Patent Publication No. 2011/0087227 A1, published on April 14, 2011 ("Mazur"), which Fusion had raised on August 7, 2024, as a challenge to Extremity's proposed amendments during IPR. (Doc. 127-1 at 5, 6 n.17; Doc. 140-2 at 48). USPTO was unconvinced by Fusion's argument that estoppel should not apply because it was unaware of Mazur until an "updated search" in response to those amendments. (Doc. 127-1 at 9). Because Mazur—a U.S. patent with a 2011 publication date—was "prior art which a skilled searcher conducting a diligent search reasonably could have been expected to discover" before filing the IPR petition, USPTO estopped Fusion from relying on it and vacated the reexamination request. (*Id.* at 7-10 (citing § 315(e)(1)).

### III.    Proceedings After the Stay

After the USPTO and PTAB proceedings were finalized, the Court lifted the stay on March 17, 2025. (Doc. 119). On May 19, 2025—two months after the stay was lifted, and over two years after the IC deadline set by the CMO—Fusion served Extremity with Second[7] Supplemental ICs ("May 2025 ICs"). (Doc. 124-1). Though the Court had modified other CMO deadlines, the IC deadline never changed. (*See* Docs. 67, 74, 76, 84, 121, 126).

Fusion had timely filed its February 2023 ICs (Doc. 127-3), which included ten references, including Cognet, Brumfield, Ferrante, and Simon, which it used in the IPR. (Doc. 140-6 at 3-4). The other references were (1) U.S. Patent No. 4,622,959, issued November 18, 1986 ("Marcus"); (2) U.S. Patent Application Publication No. US2008/0015587, published January 17, 2008 ("Munoz"); (3) PCT Application No. WO 2008/003433 A1, published January 10, 2008 ("Van Rhee"); (4) Chinese Patent No. CN2513533Y, published October 2, 2022 ("Zuojun"); (5) a printed publication titled "Omega 3 System Hansson Twin Hook Operative Technique," published in 2006 ("Omega3 Publication"), and the Omega3 Hip Fracture System ("Omega3 System"); and (6) a printed publication titled "Tibiotalocalcaneal Fusion Using the VersaNail Surgical Technique," published in 2002 ("VersaNail Publication"), and the VersaNail System. (*Id.* at 3-4, 14-21, 23-24).

The May 2025 ICs contained four new prior art references. (Doc. 124-1 at 3-4). One reference was Mazur, which Fusion had attempted to use during the IPR in August 2024, as discussed above. (*Id.* at 3). The other three references were prior art systems: (1) the Gotfried PC.C.P System sold by Orthofix Orthopedics ("Gotfried"), (2) the Phoenix Tibial Nail System sold by Zimmer Biomet ("Phoenix"), and (3) the ForeSight Nail System sold by Smith & Nephew ("ForeSight"). (*Id.* at 4, 28-30). Fusion did not "produce the

---

[7] Fusion had previously filed Supplemental ICs on October 30, 2023 ("October 2023 ICs"), nine months after the CMO IC deadline. (Doc. 127-4). The October 2023 ICs supplemented the February 2023 ICs with four prior art references, including Leu—which Fusion used during IPR. (Doc. 140-7 at 3-4).

underlying evidence cited in the May 2025" ICs for Gotfried, Phoenix, or Foresight until June 2025.  (Doc. 127 at 13; Doc. 127-6 at 3-4).

When the parties consulted the Court about the propriety of the May 2025 ICs on June 12, 2025, the Court instructed Fusion to file a motion for leave to supplement its ICs (Doc. 123), which it did on June 30, 2025 (Doc. 124).  Discovery closed on August 29, 2025.  (Doc. 126).

## DISCUSSION

### I.    Motion for Extension of the Deadline for Invalidity Contentions

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  The party seeking leave to amend must demonstrate "good cause."  *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4).  Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension."  *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amend.)).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.*  As such, "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (citing *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002)).  If the movant fails to establish that it was "diligent, the inquiry should end."  *Johnson*, 975 F.2d at 609.  Typically, a movant that had knowledge or awareness "of the facts and theories supporting amendment since the inception of the action" will not be able to demonstrate good cause.  *In re W. States Wholesale Nat. Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013).

In the context of patent litigation, parties making early disclosures of infringement and invalidity contentions are generally required to diligently amend their contentions during the period of discovery.  *O2 Micro*, 467 F.3d at 1366.  "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the

- 11 -

conduct of discovery and trial preparation." *Id.*

Here, Fusion has provided no evidence of its diligence in complying with or seeking leave to extend the CMO or its inability to disclose Mazur, Gotfried, Phoenix, or ForeSight before February 17, 2023.  (*See* Doc. 124 at 4-6); *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amend.)) (holding that good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension").  Instead, Fusion's conclusory arguments focus entirely on its actions *after* the FWD issued in November 2024, over eighteen months after the February 17, 2023 IC deadline.  (*See* Doc. 124 at 4-6).

The crux of Fusion's argument is that it "fully expected that [C]laim 11 would be found invalid" alongside the '166 Patent's other claims during IPR.  (*Id.* at 6).  But wishful thinking is not evidence of diligence.  Even if Fusion was genuinely blindsided by the IPR's outcome, Mazur—a U.S. patent with a 2011 publication date—was "prior art which a skilled searcher conducting a diligent search reasonably could have been expected to discover" before the original deadline for the parties to disclose their invalidity contentions.  (Doc. 127-1 at 9-10).  Similarly, despite Fusion's claims that it did not identify Gotfried, Phoenix, and ForeSight before IPR because they could not be raised in IPR (Doc. 124 at 4), Fusion was aware that prior art system references were nonetheless subject to the CMO IC deadline.  Its February 2023 ICs contain such references.[8]  (*Compare* Doc. 140-6 at 3, *with* Doc. 140-3 at 5).  Fusion offers no sufficient reason why it could not and did not find and disclose Mazur, Gotfried, Phoenix, and ForeSight by the deadline.

Fusion's argument that IPR "significantly changed the scope of this case," requiring it to "search for and assert additional prior art references/systems that were not part of the IPR or previously discovered in earlier prior art searches," is also unconvincing.  (Doc. 124

---

[8] Though not a dispositive factor, the Court notes that Fusion's February 2023 ICs contained only a short list of references. *Cf. Champion Power Equip. Inc. v. Firman Power Equip. Inc.*, No. cv-23-02371, 2025 WL 661816, at *4 (D. Ariz. Feb. 28, 2025) (finding that "the voluminous nature of [defendant's] initial Invalidity Contentions is alone strong evidence that [defendant] acted with diligence" and describing other cases wherein detailed invalidity contentions, with hundreds of prior art references and hundreds of pages of analysis were evidence of diligence (citations omitted)).

at 4). The IPR did not introduce new issues or force Fusion to take on new theories of invalidity. Despite Fusion's claims that Mazur was "only found through an additional search during the IPR because of Extremity's additional proposed amendments" (*id.* at 5), PTAB found that Extremity's amendments did "not enlarge the scope of the claims but include[d] narrowing limitations to the original claims" and did not "add new matter." (Doc. 140-2 at 48); *see also* 35 U.S.C. § 316(d) (prohibiting any amendment that would "enlarge the scope of the claims of the patent or introduce new matter"). In other words, Claim 11—as part of the patent at issue—has always been within the scope of this litigation and IPR merely narrowed that scope. (*See* Doc. 30 at 8-9 (asserting invalidity of '166 Patent under § 102); Doc. 124-1 at 3-4 (listing Mazur, Gotfried, Phoenix, and ForeSight as references for Fusion's invalidity theory under § 102)).

In sum, Fusion chose not to develop its ICs in detail before the CMO IC deadline based on its own assessment of PTAB's likely decision. It now faces the consequences of that choice. Its belief that PTAB should have invalidated the entire '166 Patent (Doc. 128 at 3) does not justify its lack of diligence in conducting a thorough prior art search or in seeking to extend the CMO IC deadline. Even assuming that Fusion was diligent once it found out that Claim 11 would survive IPR, Fusion does not demonstrate that it could not have discovered and disclosed Mazur, Gotfried, Phoenix, and ForeSight in compliance with the deadline. *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amend.)). Fusion therefore fails to bear its burden as movant and cannot demonstrate good cause. *Id.* As such, Fusion's Motion for Extension of the Deadline for Invalidity Contentions (Doc. 124) is denied.[9]

## II. Summary Judgment

### A. Legal Standard

A court must grant summary judgment or partial summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[9] Because evidence outside the record is not considered on summary judgment, Fed. R. Civ. P. 56, the Court does not consider Fusion's untimely ICs in the following analysis of the summary judgment motions.

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Partial summary judgment allows the movant to challenge "each claim or defense" or "part of each claim or defense." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 325). In any case, when considering motions for summary judgment, courts should construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

If the movant fails to carry its initial burden of production, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the non-movant to demonstrate the existence of a material, factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he threshold inquiry . . . [is] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Consequently, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### B.    Pre-AIA Invalidity

The first substantive issue raised by the parties in their respective motions is the alleged invalidity of Claim 11—the '166 Patent's only surviving claim. (Doc. 133 at 2-3, 14-18; Doc. 145 at 6-11; Doc. 150 at 11-17; Docs. 139, 146, 148).

Though a party defending a patent infringement suit may challenge the validity of the patent and claims at issue, 35 U.S.C. § 282(b)(2), "an issued patent is presumed valid."

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 412 (2007); 35 U.S.C. § 282(a). Regardless of whether a claim is "in independent, dependent, or multiple dependent form," it is "presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). In other words, "dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." *Id.*

This presumption of validity affects what each party must present to demonstrate its entitlement to judgment. *Massey v. Del Lab'ys, Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997). While, as in any other case, the parties in a patent case who file cross-motions for summary judgment each carry "the burden on [their] own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts," *id.*, the party asserting invalidity must do so by "clear and convincing evidence." 35 U.S.C. § 282(a); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 102-03 (2011); *see also Cap Export, LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1008 (Fed. Cir. 2018). Clear and convincing evidence places in the fact finder "an abiding conviction that the truth of [the] factual contentions are highly probable." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

In contrast, a patentee moving for summary judgment that a patent or patent claim is not invalid need not present any evidence of validity to prevail. *Massey*, 118 F.3d at 1573. And, when defending against a motion for summary judgment of invalidity, the patentee need only "bring forth some evidence" demonstrating a genuine dispute of material fact as to the challenger's grounds for invalidity. *Id.*

### 1.    IPR Estoppel

While several pre-AIA grounds for invalidity are generally available to a challenger, an IPR petitioner's arguments in a civil suit may be limited by the arguments that it made during IPR. 35 U.S.C. §§ 282(b), 315(e)(2). When an IPR "results in a final written decision" regarding a patent at issue in civil litigation, the IPR petitioner cannot assert invalidity in the civil suit "on any ground that the petitioner raised or reasonably could have

- 15 -

raised during" IPR. *Id.* § 315(e)(2). IPR estoppel therefore applies to (1) a "ground," which (2) the "petitioner raised or reasonably could have raised during IPR," when (3) the IPR "results in a" FWD." *Id.*

While the parties do not dispute that the IPR here resulted in a FWD (Doc. 140-2), Extremity—as the party asserting IPR estoppel—bears the burden of establishing the remaining conditions for estoppel. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1297-99 (Fed. Cir. 2023); *Click-to-Call Techs. LP v. Ingenio, Inc.*, 45 F.4th 1363, 1369 (Fed. Cir. 2022) (quoting *Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F.4th 1035, 1041-42 (Fed. Cir. 2022) (discussing § 315(e)(1) estoppel for proceedings before USPTO)).

### a.      "Ground"

First, Extremity must show that any argument it seeks to estop is a "ground" for the purposes of IPR estoppel. A "ground" is a "theor[y] of invalidity available to challenge a claim under §§ 102 and 103." *Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354, 1365 (Fed. Cir. 2025). As noted above, IPR petitioners may only challenge a patent's validity using "prior art consisting of patents or printed publications," and have "no opportunity to challenge that the claimed invention was known or used by others, on sale, or in public use." *Id.* (quoting 35 U.S.C. § 311(b)).

So "grounds are the theories of invalidity available" during IPR, "which are limited . . . to asserting that the claimed invention was patented or described in a printed publication (or would have been obvious only on the basis of prior art patents or printed publications)." *Id.* at 1366. Only these grounds can be subject to IPR estoppel. *Id.*

Conversely, "IPR estoppel does not preclude a petitioner from asserting that a claimed invention was known or used by others, on sale, or in public use in district court." *Id.* at 1367. Moreover, the petitioner is not estopped from using prior art that it raised or reasonably could have raised during the IPR as evidence to support a ground that could not have been raised during IPR. *Id.* Though "a ground" depends on prior art, "a ground is not the prior art." *Id.* at 1365-67. Rather, "prior art is evidence of a ground, not coextensive with a ground." *Id.* at 1366. Accordingly, an IPR petitioner in a civil suit may use patents

or printed publications that it raised or reasonably could have raised in IPR as some evidence of invalidity if combined with a prior art system, "such that the 'basis' of the ground" no longer solely relied on patents or printed publications. *Id.*

### b.   "Raised or Reasonably Could Have Raised"

Second, Extremity must show that any such "ground" was "raised or reasonably could have [been] raised" by Fusion during IPR. 35 U.S.C. § 315(e)(2). Any ground explicitly contained in a petition fulfills this element of IPR estoppel. *Ironburg*, 64 F.4th at 1297. IPR estoppel may still apply even when a ground was not raised if it reasonably could have been raised—i.e., if the petitioner was aware or constructively aware of that ground. 35 U.S.C. § 315(e)(2); *Cal. Inst. Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022); *Ironburg*, 64 F.4th at 1298. A petitioner is constructively aware of a ground if "a skilled searcher conducting a diligent search reasonably could have been expected to discover" it. *Ironburg*, 64 F.4th at 1298. If the other conditions of IPR estoppel are met and the patent holder can establish awareness or constructive awareness of a ground that the petitioner failed to raise during IPR, then the petitioner is estopped from asserting that ground in district court. *Id.*; *Cal. Inst.*, 25 F.4th at 991.

### c.   Extremity's IPR Estoppel Arguments

In its Motion for Partial Summary Judgment, Extremity urges the Court to find that Fusion is estopped from raising three categories of grounds: (1) those raised against Claim 11 during the IPR, (2) those raised as to other claims in the '166 Patent, but not raised as to Claim 11, and (3) those that reasonably could have been raised. (Doc. 133 at 15-16). The parties agree that IPR estoppel cannot apply to grounds based upon prior art systems, such as the Omega3 System and VersaNail System. (Doc. 145 at 8; Doc. 150 at 14).

IPR estoppel clearly applies to the first category of grounds. Fusion raised three grounds against Claim 11 during the IPR: (1) obviousness citing Cognet and Ferrante, (2) anticipation by Simon, and (3) obviousness citing Simon and Ferrante. (Doc. 140-2 at 6). Each qualifies as a "ground" under § 315(e)(2) because they are theories of invalidity available during IPR and based only on patents or printed publications. *Ingenico*, 136 F.4th

at 1366. And Fusion actually raised each of these grounds in its IPR petition as to Claim 11. (Doc. 140-3 at 11, 40-42, 57, 63, 65-66). Accordingly, each condition of estoppel is satisfied as to these grounds and Fusion may not rely on them to challenge Claim 11's validity.

IPR estoppel also applies to the second category of grounds. During IPR, Fusion raised four grounds against other claims, but not as to Claim 11: (1) anticipation citing Cognet; (2) obviousness citing Cognet and Brumfield; (3) obviousness citing Simon and Cognet; and (4) obviousness citing Simon and Leu. (Doc. 140-2 at 6). Each qualifies as a "ground" under § 315(e)(2) because they are theories of invalidity available during IPR and based only on patents or printed publications. *Ingenico*, 136 F.4th at 1366. Further, Fusion was aware of these grounds, as demonstrated by the fact that it did raise them as to the other claims, and. thus, reasonably could have raised them against Claim 11. (Doc. 140-2 at 6). Accordingly, the conditions for IPR estoppel are met for each of these grounds and Fusion may not rely on them to challenge Claim 11's validity.

As to the third category, Extremity asks that the Court hold that Claim 11 is valid against any challenge based on any patents or printed publications from Fusion's February 2023 ICs or any combination thereof. (Doc. 133 at 16). This request is overly broad. As an initial matter, Extremity is correct that anticipation and obviousness arguments based on these references were available to Fusion during the IPR and Fusion's inclusion of these references in the February 2023 ICs demonstrates its awareness of them. Accordingly, Fusion is estopped from arguing invalidity grounds based solely on those patents and printed publications: (1) anticipation by Marcus, Munoz, the Omega3 Publication, Van Rhee, the VersaNail Publication, or Zuojun, and (2) obviousness over solely those references or any combination thereof.

But such estoppel does not mean that Fusion cannot rely on any patent or printed publication references in its February 2023 ICs as evidence to support public-use or on-sale grounds for invalidity. *Ingenico*, 136 F.4th at 1366. Indeed, Fusion may assert those references—Brumfield, Cognet, Marcus, Munoz, the Omega3 Publication, Simon, Van

Rhee, the VersaNail Publication, Ferrante, and Zuojun—as evidence of invalidity under the public-use bar and on-sale bar. *Id.* Moreover, it may use them in combination with its prior art system references—the Omega3 System and VersaNail System—to assert the public-use bar, on-sale bar, or obviousness because such grounds could not have been raised during IPR proceedings. *Id.*

### 2. Collateral Estoppel

In turn, Fusion argues that Extremity is collaterally estopped from asserting the validity of Claim 11 of the '166 Patent because Extremity did not appeal PTAB's finding that Claims 1 and 10—upon which Claim 11 relies—were invalid. (Doc. 148 at 14-15; Doc. 146 at 2). This argument misunderstands collateral estoppel as applied to patent litigation following IPR.[10] When "dealing with claims that have *not* been found unpatentable . . . those claims remain presumptively valid and can only be found invalid in district court litigation by clear and convincing evidence." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1362 (Fed. Cir. 2024). The presumption of validity applies to dependent claims "even though dependent upon an invalid claim." 35 U.S.C. § 282(a).

While Fusion may have proven the invalidity of Claims 1-10 and 12-15 before PTAB under a preponderance of the evidence standard, it "has not faced, let alone overcome" the higher, clear and convincing evidence standard imposed on assertions of invalidity in district court. *ParkerVision*, 116 F.4th at 1362. Accordingly, Extremity may "present[] evidence on the unresolved question of whether [Fusion] is able to prove" invalidity "by clear and convincing evidence." *Id.* Extremity is entitled to the "opportunity to defend the validity of" Claim 11, "which [was] not shown to be unpatentable in the IPR." *Id.* Even assuming—as Fusion does (Doc. 148 at 14-15)—that "the asserted claim[]" is "immaterially different from the unpatentable claims for purposes of invalidity," collateral estoppel does not apply to prevent a patentee from asserting the claim. *Kroy IP Holdings,*

---

[10] Though collateral estoppel is generally governed by regional circuit law, the Federal Circuit applies its "own law to questions involving substantive issues of patent law, including any aspects of collateral estoppel that may have special or unique application to patent cases." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1355-56 (Fed. Cir. 2024).

*LLC v. Groupon, Inc.*, 127 F.4th 1376, 1379 (Fed. Cir. 2025). "To hold otherwise would deprive [Extremity] of [its] property right without first requiring proof of patent invalidity that satisfies the statutorily-prescribed clear and convincing evidence standard." *Id.* at 1380-81.

Fusion cannot invalidate Claim 11 by making the conclusory assertion that its references from the IPR "so clearly show" the obviousness of Claim 11 that they must satisfy both the preponderance of the evidence standard and the clear and convincing evidence standard. (*See* Doc. 146 at 7). In district court, Fusion "must meet a higher burden." *ParkerVision*, 116 F.4th at 1362. In doing so, Fusion will need to establish invalidity by clear and convincing evidence as to each limitation of Claim 11, including those limitations incorporated from Claims 1 and 10. *Inland Diamond Prods. Co. v. Cherry Optical Inc.*, 155 F.4th 1365, 1370 (Fed. Cir. 2025) (requiring proof of invalidity of a dependent claim as a whole, "not just whatever limitations it contains beyond the relevant" unpatentable claims upon which it depends); 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").

### 3. Invalidity Analysis

#### a. Fusion's Motion for Summary Judgment of Invalidity[11]

Fusion's Motion for Summary Judgment attempts to extend the IPR's findings of invalidity against Claims 1 and 10 as evidence that Claim 11 is invalid as obvious in this civil proceeding. (Doc. 148 at 6-14; Doc. 146 at 2-3, 6-8). Because Fusion assumes that collateral estoppel prevents Extremity from asserting Claim 11's dependent limitations from Claims 1 and 10, Fusion only argues the invalidity of Claim 11's single independent limitation and does so in reliance on grounds that it successfully raised against Claim 10 during IPR. In other words, Fusion only argues that one of Claim 11's many limitations is

---

[11] Fusion also asks the Court to enter summary judgment in its favor, dismissing Claims 1-10 and 12-15 of the '166 Patent. (*E.g.*, Doc. 146 at 11). The Court has no reason to do so because the Inter Partes Review Certificate cancelled them. (Doc. 127-1 at 5); 35 U.S.C. § 318(b); *Kroy IP*, 127 F.4th at 1381 ("[O]nce a claim is already and finally held unpatentable as a result of an IPR, the claim is subject to a wholly ministerial, inevitable, unreversible cancellation . . . as a matter of law.").

- 20 -

invalid and does so with grounds that it cannot raise here because of IPR estoppel..

As noted above, a patent challenger must overcome the presumption of validity afforded to each challenged patent claim by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft*, 564 U.S. at 102-03. To do so over obviousness, it must show that "the differences between the subject matter" of the invention "and the prior art are such that the subject matter as a whole would have been obvious [to a POSA] at the time the invention was made." 35 U.S.C. § 103(a) (pre-AIA).

Under this standard, Fusion's reliance on the FWD is fatal to its motion because it fails to assert obviousness as to "the subject matter as a whole." *Id.* As discussed above, PTAB's findings as to the other claims in the '166 Patent do not establish any facts in this civil suit. *Inland*, 155 F.4th at 1370. Rather, Fusion must prove that Claim 11 is invalid by addressing not only the limitation imposed by Claim 11, but also the other limitations which Claim 11 incorporates from Claims 1 and 10. *Id.* Because Fusion incorrectly assumes that collateral estoppel applies in its favor, it only points to evidence regarding the obviousness of Claim 11's self-tapping screw limitation—to the exclusion of any other evidence regarding the remaining limitations. (Doc. 148 at 6-14; Doc. 146 at 2-3, 6-8; *see also* Doc. 150-4 at 51). In other words, Fusion repeats the error it made during IPR: by failing to address the limitations of Claims 1 and 10, it fails to challenge Claim 11's "as a whole." 35 U.S.C. § 103(a) (pre-AIA). As such, it has not carried its initial burden of production. *Celotex*, 477 U.S. at 323; *Massey*, 118 F.3d at 1573.

Moreover, even if the Court assumed that the limitations incorporated from Claims 1 and 10 were obvious, Fusion fails to show that Claim 11's limitation is obvious. Fusion's argument that Claim 11 is "invalid for the same reasons" as Claim 10 (Doc. 146 at 6-7; Doc. 148 at 2, 9, 18) is barred by IPR estoppel because Fusion actually raised these grounds during IPR and the IPR resulted in an FWD. 35 U.S.C. § 315(e)(2). Fusion does not argue that the references it used to invalidate Claims 1 and 10 demonstrate that Claim 11 is invalid under the public-use or on-sale bar. (Doc. 148 at 6-16). Nor does it argue that those references combine with any prior art systems to render Claim 11 invalid.

(*See id.*). Instead, Fusion argues only that "PTAB found every other claim in the '166 [P]atent was invalid and would have concluded the same for [C]laim 11 if properly set before it."[12] (*Id.* at 18; *see id.* at 6-16).

In support of this argument, Fusion invokes expert testimony about POSAs' "general knowledge." (*Id.* at 9, 13; Doc. 146 at 8). It cites deposition testimony from Mr. Leonel Dominguez, "Fusion's expert in the IPR proceedings," who offered opinions about the obviousness of the '166 Patent's claims in those proceedings. (Doc. 148 at 9). It also cites deposition testimony from Dr. Eric Ledet, Extremity's expert during IPR proceedings, where he "submitt[ed] an expert declaration and [gave] two depositions." (*Id.* at 13). Fusion argues that these experts' "general knowledge" provides a ground that is not subject to IPR estoppel because it could not have been raised during IPR. (Doc. 146 at 8). While general knowledge alone is not a proper basis for an IPR petition, a ground in an IPR petition based on prior art or printed publications may nonetheless rely on general knowledge. *Qualcomm Inc. v. Apple Inc.*, 134 F.4th 1355, 1365 (Fed. Cir. 2025). Indeed, an obviousness inquiry "*requires* an assessment of the background knowledge possessed by a" POSA. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. 2020) (citation modified) (quoting *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349, 1354 (Fed. Cir. 2010)). Here, as Fusion itself demonstrates, it raised this knowledge before PTAB in consideration of the obviousness of the '166 Patent. (Doc. 148 at 9, 13). Accordingly, this general knowledge is part of the "same reasons"—i.e., grounds—barred by IPR estoppel.

Because Fusion has not made the required showing "that a reasonable jury could *only* find, by clear and convincing evidence," that Claim 11 is obvious, *Inland*, 155 F.4th at 1370, its Motion for Summary Judgment of Invalidity (Doc. 148) is denied.

---

[12] Fusion attempts to excuse its failure to "properly set" the grounds that it used to invalidate Claims 1 and 10 before PTAB by characterizing the failure as a typographical error. (Doc. 146 at 6). But it identifies no exception for typos under the IPR estoppel statute that would permit a petitioner to continue to rely on a ground when all conditions of estoppel are met. (*See id.*).

**b.    Extremity's Motion for Partial Summary Judgment: Invalidity**

In the portion of its Motion for Partial Summary Judgment regarding invalidity, Extremity asks the Court to determine "that several of Fusion's invalidity arguments" fail "as a matter of law." (Doc. 133 at 2-3, 14-18). Specifically, Extremity asks the Court to (1) estop Fusion from making certain arguments and (2) to hold that no jury could find in favor of Fusion on certain invalidity grounds based on prior art systems under the public-use and on-sale bars. (*Id.* at 3). Extremity's estoppel arguments were discussed above in Discussion subsections II.B.1.c and II.B.3.a, and its motion is granted in part and denied in part according to that discussion. The remaining inquiry, therefore, is whether Extremity is entitled to partial summary judgment that Fusion cannot show that Claim 11 is invalid under the public-use and on-sale bars based on the Omega3 and VersaNail Systems.

As noted above, because of the presumption of validity afforded to patent claims, *KSR*, 550 U.S. at 412; 35 U.S.C. § 282(a), Extremity need not present any evidence of validity to prevail. *Massey*, 118 F.3d at 1573. In contrast, Fusion must establish that a genuine dispute of material fact persists such that a jury could find that it has proven invalidity by "clear and convincing evidence." *Microsoft*, 564 U.S. at 102-03; *see also Cap Export*, 722 F. App'x at 1008.

Under the public-use bar, a person is not entitled to a patent if "the invention was . . . in public use . . . in this country, more than one year prior to the" critical date for the patent—one year prior to the patent's priority date. 35 U.S.C. § 102(b) (pre-AIA). This bar is "triggered where, before the critical date, the invention is (1) in public use and (2) ready for patenting." *Minerva Surgical Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023) (citation modified) (quoting *Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018)). Similarly, under the on-sale bar, a person is not entitled to a patent if "the invention was . . . on sale in this country, more than one year prior to the" critical date. 35 U.S.C. § 102(b) (pre-AIA). This bar is triggered where, before the critical date, the invention was (1) on sale and (2) ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525

- 23 -

U.S. 55, 67 (1998). Prior art may satisfy the first prong of each bar if that prior art anticipates or renders obvious the claims at issue. *Ingenico*, 136 F.4th at 1360. Because the parties focus only on the first prong of each bar (Doc. 133 at 17-18; Doc. 150 at 14-17), it is not necessary to address the "ready for patenting" prong of either bar.[13]

Whether each bar applies to invalidate the claim at issue "is a question of law based on underlying factual findings." *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013) (on-sale bar); *Leader Techs., Inc. v. Facebook Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012) (public-use bar).

To satisfy the "on sale" prong of the on-sale bar, the invention "must be the subject of a commercial offer for sale." *Pfaff*, 525 U.S. at 67. "An actual sale is not required for the activity to be an invalidating commercial offer for sale." *Hamilton Beach*, 726 F.3d at 1374 (citing *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008)). "An attempt to sell is sufficient so long as it is 'sufficiently definite that another party could make a binding contract by simple acceptance.'" *Id.* (citing *Atlanta Attachment*, 516 F.3d at 1365). "In determining such definiteness," courts "review the language of the proposal in accordance with the principles of general contract law." *Id.* at 1375 (citing *Atlanta Attachment*, 516 F.3d at 1365).

The "public use" prong is satisfied "if the invention 'was accessible to the public or was commercially exploited' by the inventor." *Minerva*, 59 F.4th at 1377 (quoting *Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015)). An invention is accessible "if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality." *Id.* (quoting *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008)). "Commercial exploitation is a clear indication of public use." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005), *abrogated in part on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). While "public use requires actual use," the party

---

[13] "Ready for patenting" has the same meaning under the on-sale bar as it does under the public-use bar. *Compare Pfaff*, 525 U.S. at 67-68 (on-sale bar), *with Minerva*, 59 F.4th at 1377-78 (public-use bar).

challenging the patent's invalidity may use circumstantial evidence of actual use. *Iogenico*, 136 F.4th at 1361-62.

Here, Extremity's argument for partial summary judgment is that Fusion has failed to produce any admissible evidence[14] of invalidity to support these factual findings under either bar as to either the Omega3 or VersaNail System before February 11, 2009.[15] (Doc. 133 at 17-18; Doc. 145 at 9-10). In its opposition to Extremity's motion, Fusion identifies invalidity claim charts for the Omega3 and VersaNail Systems. (Doc. 150 at 16; Doc. 150-4 at 93-103, 104-15, 259-300, 305-24). Though the claim charts describe the systems in comparison to the '166 Patent, they do not provide any information relevant to assessing the first prong of either the public-use or on-sale bars. As such, the only relevant evidence identified by Fusion is the Omega3 and VersaNail Publications.

As to the on-sale bar, neither of the Publications contains any evidence of an actual sale or of a sufficiently definitive offer of sale that would be binding upon simple acceptance. (*See* Doc. 150-4 at 259-300, 305-24). As Extremity highlights, "these documents include only information about the product—for example par numbers sizes, quantities in a case, and descriptions, without any of the other information that a customer would need to place a sales/purchase order, such as pricing or delivery terms." (Doc. 145 at 10; *see* Doc. 150-4 at 293-301, 319-21). Fusion provides no substantive argument that this information would satisfy the first prong of the on-sale bar or even that it generates a genuine dispute of material fact under the applicable legal standards. (*See* Doc. 150 at 16). With the evidence identified by Fusion, no reasonable jury could find that the Omega3 or VersaNail Systems were actually sold or "the subject of a commercial offer for sale." *Pfaff*,

---

[14] Extremity identifies several exhibits to Fusion's response which appear to be screenshots of webpages about the Omega3 and VersaNail Systems (among others). (Doc. 145 at 10; Doc. 150-6 at 5-7, 11). As Extremity points out, these documents are not labelled with Bates numbers and do not appear to have been produced during discovery and may not have existed when discovery closed in August 2025. (Doc. 145 at 10; Doc. 150-6 at 5-7, 11). Because evidence outside the record is not considered on summary judgment, Fed. R. Civ. P. 56, the Court does not consider these exhibits in its analysis of the validity of Claim 11.

[15] Under both the public-use and on-sale bars, the critical date—one year prior to the priority date, February 11, 2010—is February 11, 2009. 35 U.S.C. § 102(b); (Doc. 150 at 15).

- 25 -

525 U.S. at 67; *Hamilton Beach*, 726 F.3d at 1374 (citing *Atlanta Attachment*, 516 F.3d at 1365). As such, Extremity's Motion for Partial Summary Judgment (Doc. 133) is granted as to the on-sale bar based on the Omega3 and VersaNail Systems.

As to the public-use bar, the Omega3 Publication similarly provides no evidence—either direct or circumstantial—that the Omega3 System was ever used. (*See* Doc. 150-4 at 259-301); *Iogenico*, 136 F.4th at 1361-62. As such, Extremity's Motion for Partial Summary Judgment (Doc. 133) is granted as to the public-use bar based on the Omega3 System.

On the other hand, the VersaNail Publication does demonstrate the existence of a genuine dispute of material fact as to whether the VersaNail System was in public use before February 11, 2009. The Publication—dated 2002—shows actual use of the VersaNail System by its inventor(s) with the inclusion of a case study, demonstrating the successful use of the VersaNail System to treat a patient. (Doc. 150-4 at 322, 324). The inclusion of this "use" in a surgical technique guide describing the use of a commercial product is evidence of "commercial exploitation" by the inventor, which could satisfy the public-use bar's first prong. *Minerva*, 59 F.4th at 1377 (quoting *Delano Farms*, 778 F.3d at 1247); *Invitrogen*, 424 F.3d at 1380. Accordingly, Extremity's Motion for Partial Summary Judgment (Doc. 133) is denied as to the public-use bar with respect to the VersaNail System.

Fusion has raised a material issue of fact as to this aspect of Extremity's motion. Thus, the issue of whether, by clear and convincing evidence the VersaNail System was in public use and was ready for patenting by February 11, 2009, is preserved for trial.

### C.    Infringement

The second substantive issue is Fusion's alleged infringement of the '166 Patent through its IntraLock System. (*Id.* at 2). Specifically, Extremity asks the Court to enter summary judgment that Fusion "has literally infringed, and continues to literally infringe, Claim 11 . . . by making, using, selling and offering to sell Version A of its IntraLock

[S]ystem."[16] (*Id.*). The parties do not dispute that Fusion "has offered for sale and in fact sold IntraLock in the United States." (Doc. 134 at 2; Doc. 151 at 2).

"[W]hoever without authority . . . offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "Summary judgment" of infringement "is appropriate when it is apparent that only one conclusion . . . could be reached by a reasonable jury." *TechSearch, LCC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) (citing *ATD Corp. v. Lyndall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998)). To prevail, the patentee must, by a preponderance of the evidence, establish infringement of "all of the elements of the claim, as correctly construed," by demonstrating their presence in the accused system. *Id.* at 1369; *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1125 (Fed. Cir. 2018) (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1366 (Fed. Cir. 2003)).

"A patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product." *TechSearch*, 286 F.3d at 1369 (citation modified) (citing *Markman v. Westview Inst., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). In other words, the Court "first determine[s] the correct claim scope, and then compare[s] the properly construed claim to the accused device to determine whether all of the claim limitations are present." *Id.* (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998)).

### 1.    The Accused Device

Like Extremity's IOFiX system, which relies on the '166 Patent, Fusion's IntraLock System is "directed to orthopedic medical devices for use in the fusion of bones in the extremities of the human body." (Doc. 133 at 2; Doc. 150 at 2). The IntraLock System also has three members, a Post Nail (orange), a Lag Screw (green), and a Set Screw (blue), as shown in the following figure from Fusion's surgical technique guide:

---

[16] Extremity does not ask the Court to assess whether summary judgment is appropriate as to Version B of the IntraLock System, which Fusion calls "Revision B" and "claims that it has recently developed." (Doc. 133 at 2, 4 n.3). All future mentions of the IntraLock System will be in reference to Version A because Version B is not at issue here.



(Doc. 134-7 at 2 (color not in original); Doc. 133 at 4; Doc. 150 at 2).

Fusion concedes that the IntraLock System meets all but one of Claim 11's limitations, including that the Lag Screw and Set Screw meet the limitations of the Proximal Screw and Distal Screw, respectively. (Doc. 150 at 3-4; Doc. 133 at 6-7, 10-14; Doc. 134 at 4-6, 8-11). It only asserts that the IntraLock Post Nail does not meet one limitation described in Claim [1c] and incorporated by Claim 11. (Doc. 150 at 3-4; Doc. 133 at 7-10; Doc. 145 at 2-6). In the context of the '166 Patent, Claim [1c] describes the Proximal Bore , Bone Anchor, Bone Anchor Shaft, and the apertures that form the inlet and outlet of the Proximal Bore. As relevant here, it recites:

> [1c] a third member comprising a third elongated body . . . , wherein the third member comprises a first aperture . . . and a first bore extending . . . from the first aperture to a second aperture on an exterior surface of the third member, wherein the first bore comprises an interior surface at the first aperture, *wherein there are no threads adjacent to the second aperture on the exterior surface of the third member*, . . . .

(Doc. 148-2 at 33 (emphasis added)). According to Fusion, this language includes a negative limitation which the Post Nail does not meet because the Post Nail "includes threads that are within the top bore and adjacent to the apertures that create the bore (the first and second apertures)." (Doc. 150 at 3 (discussing language from Claim [1c] shown in italics above)). Fusion does not dispute that the other limitations set forth in Claim [1c] are met by IntraLock. (Doc. 150 at 3).

## 2.     The Scope of Claim [1c]

Courts construe patent claims as a matter of law, "based on the ordinary and customary meaning that the term would have to a" POSA "at the time of the invention." *Tr. of Columbia Univ. v. Gen Digit. Inc.*, 169 F.4th 1320, 1333 (Fed. Cir. 2026) (citation modified) (quoting *Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015) (quoting *Markman*, 517 U.S. at 372). The POSA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Tr. of Columbia Univ.*, 169 F.4th at 1333 (quoting *Philips*, 415 F.3d at 1313).

As such, claim construction "begins with an analysis of the intrinsic record of the patent." *Id.* at 1333-34. Intrinsic evidence includes "the patent claims and specifications, along with the patent's prosecution history." *Teva*, 574 U.S. at 331. If such intrinsic evidence does not resolve the issue, "extrinsic evidence may be relevant." *Tr. of Columbia Univ.*, 169 F.4th at 1334.

Here, intrinsic evidence resolves the issue. Though the Court did not construe the language at issue here beyond its "plain and ordinary meaning[]" in its Claim Construction Order, it did find that the language was not "indefinite" and discussed its plain and ordinary meaning to a POSA. (Doc. 73 at 22-23). Indeed, the Court noted that the '166 Patent's specifications—intrinsic evidence of the claim's meaning—plainly state that the relevant portion of the third member "is generally cylindrical in shape and has a smooth exterior." (*Id.* at 22; Doc. 148-2 at 32). Such a "smooth exterior" would be incompatible with the presence of threads "on the exterior surface of the third member." (Doc. 73 at 22; Doc. 148-2 at 32-33).[17]

---

[17] Fusion and its expert assert that the Court's discussion of the language at issue relied on "an error in Fusion's Responsive Claim Construction Brief" (Doc. 63 at 12) and Mr. Dominguez's Declaration in support of that brief (Doc. 63-1 at 17-18), in which they "inadvertently referred to [the first bore] as the second aperture." (Doc. 134-8 at 21). While the Court did consider the distinction between "adjacent"—meaning alongside of, tangent to, or next to—and "inside of," the Court's holding that "there is no legitimate confusion about where there are no threads," did not rely solely on that distinction. (*See* Doc. 73 at 21-22). Similarly, Fusion's expert's proposed definition of "adjacent" did not

- 29 -

Moreover, courts must interpret patent claims "with an eye toward giving effect to all terms in the claim." *Bayer Pharma Aktienesellschaft v. Mylan Pharms., Inc.*, 152 F.4th 1400, 1406 (Fed. Cir. 2025) (quoting *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010)).  Fusion's interpretation of the limitation at issue here would render meaningless other language in Claim [1c].  Reading "wherein there are no threads adjacent to the second aperture on the exterior surface of the third member" so that "on the exterior surface" modifies "second aperture"—rather than modifying "no threads adjacent"—would needlessly duplicate Claim [1c]'s earlier definition of the second aperture, which specifies that it is "on an exterior surface." (Doc. 150 at 6; Doc. 134-8 at 21).  The phrase "on the exterior surface" in this limitation therefore only has meaning if used to modify "no threads adjacent."  And this meaning is consistent with the specifications for the third member, as described above.  Accordingly, both the patent claim and the patent specifications are incompatible with Fusion's reading of the limitation.

Nonetheless, Fusion introduces extrinsic evidence[18] of a patent application from which the '166 Patent was a continuation, to support its arguments that "internal threads . . . are adjacent to the second aperture on the exterior surface of the third member." (Doc. 150 at 6; Doc. 148-2 at 2).  Even if this evidence were relevant despite the resolution of the issue by intrinsic evidence, *Tr. of Columbia Univ.*, 169 F.4th at 1334, it too suggests that Fusion's reading of Claim [1c] is incorrect.  During continued examination of the application, the Patent Examiner found that many of its claims were anticipated by a prior art patent. (Doc. 150-6 at 17-23).  One claim included the same limitation at issue here: "wherein there are no threads adjacent to the second aperture on the exterior surface of the third member." (Doc. 150 at 6; Doc. 150-6 at 18; *cf.* Doc. 148-2 at 33).  The Examiner

rely on that distinction.  (*See* Doc. 63 at 12).  Accordingly, the Court's analysis of "adjacent" based on "its conventional definition" and its use in context within the '166 Patent is not affected by Fusion's error.

[18] Once again, Fusion's response relies on several exhibits which were not timely disclosed, *supra* Discussion section I, or which are otherwise not part of the record. (Doc. 150 at 6-10; Doc. 150-2 at 57-60, Doc. 150-5 at 76-203).  As Extremity points out, these exhibits are not labelled with Bates numbers and do not appear to have been produced during discovery. (Doc. 145 at 2-3; Doc. 145 at 10; Doc. 150-6 at 5-7, 11).  Because evidence outside the record is not considered on summary judgment, Fed. R. Civ. P. 56, the Court does not consider these exhibits in its analysis of the validity of Claim 11.

- 30 -

found that the prior art patent disclosed this limitation, "not[ing] that [the] threads . . . are internal threads." (Doc. 150-6 at 17-18). Fusion argues that this note suggests that internal threads are considered adjacent. (Doc. 150 at 6). Contrary to Fusion's assertion, however, the note specifies that the internal threads are *not* considered adjacent, such that a third member with internal threads could disclose the limitation that "there are no threads adjacent to the second aperture on the exterior surface of the third member." (Doc. 150-6 at 17-18). If internal threads were considered adjacent, the prior art patent would not have disclosed the limitation.

In sum, the claim and specifications are strong intrinsic evidence (incidentally supported by Fusion's extrinsic evidence) that the limitation "wherein there are no threads adjacent to the second aperture on the exterior surface of the third member" is not a negative limitation that excludes the presence of internal threads within the first bore. It simply states that no threads can be present on the exterior surface of the third member, adjacent to the second aperture.

### 3.    Literal Infringement

Given the scope of Claim [1c] as construed based on intrinsic evidence, there are no relevant factual disputes regarding literal infringement. *Wegner Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001) (citing *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)); *Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996) ("Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over" the construction of the claim at issue, "the question of literal infringement collapses to one of claim construction."). Because Fusion admits that there are no adjacent threads "on the exterior surface" of the third member, there is no genuine issue of material fact that the limitation at issue in Claim [1c] is met by the IntraLock Post Nail. (Doc. 150 at 6).

Though the parties emphasize their factual dispute about internal threads, Fusion's arguments about Claim [1c]'s construction demonstrate that the literal infringement analysis is reducible to the construction of the limitation at issue. (*See id.* at 5-7). Within

the scope of the claim as described above, the presence of internal threads and the parties' arguments about the proximity of such threads to the second aperture are irrelevant to literal infringement. (*See id.* at 5-10; Doc. 133 at 9-10; Doc. 134 at 6-8; Doc. 145 at 2-6).

Accordingly, the Post Nail in Fusion's IntraLock System meets Claim [1c]'s limitation that there can be "no threads adjacent to the second aperture on the exterior surface of the third member." (Doc. 148-2 at 33). While the Court holds that Fusion has literally infringed Claim 11, it withholds judgment of infringement pending resolution of the issue of invalidity.

## CONCLUSION

**IT IS ORDERED** that Defendant Fusion Orthopedics, LLC's Motion for Extension of the Deadline for Invalidity Contentions (Doc. 124) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Fusion Orthopedics, LLC's Amended Motion for Summary Judgment of Invalidity (Doc. 148) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Extremity Medical LLC's Motion for Partial Summary Judgment (Doc. 133) is **GRANTED in part** and **DENIED in part.**

Dated this 3rd day of August, 2026**.**

G. Murray Snow
Senior United States District Judge

- 32 -